## IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF DELAWARE

PEABODY COAL CO., LLC, and )
EASTERN ASSOCIATED COAL CORP., )
           )
          Plaintiffs, )
           )
          v. )    Civil Action No. 05-671-SLR
           )
JO ANNE B. BARNHART, )
Commissioner of Social Security, )
           )
          Defendant. )

## BRIEF IN SUPPORT OF
## DEFENDANT'S MOTION TO DISMISS

PETER D. KEISLER
Assistant Attorney General

COLM F. CONNOLLY
United States Attorney

PATRICIA C. HANNIGAN
Assistant United States Attorney
The Nemours Building
1007 Orange Street, Suite 700
P. O. Box 2046
Wilmington, DE 19899-2046
(302) 573-6277

RICHARD G. LEPLEY
Assistant Branch Director
ERIC R. WOMACK
Trial Attorney
Civil Division, Federal Programs Branch
U. S. Department of Justice
20 Massachusetts Ave., N.W.
Washington, D.C. 20530
(202) 514-4020

*Attorneys for Defendant Commissioner*
*Of Social Security*

Dated:  March 14, 2006

## TABLE OF CONTENTS

PAGE

TABLE OF AUTHORITIES ..................................................................................... -iii-

STATEMENT OF NATURE AND STAGE OF PROCEEDING ................................... 1

SUMMARY OF ARGUMENT ..................................................................................... 1

STATEMENT OF FACTS ........................................................................................... 2

STATUTORY BACKGROUND ................................................................................... 2

      A.    Pre-Act History Of UMWA Benefit Trusts ............................................... 2

      B.    The Coal Industry Retiree Health Benefit Act ......................................... 3

      C.    The Supreme Court's Decision in Eastern Enterprises and SSA's
           Reassignment of Beneficiaries .................................................................. 6

ARGUMENT ............................................................................................................... 7

    I.    THE SSA'S ASSIGNMENT OF BENEFICIARIES TO PLAINTIFFS
        AFTER EASTERN ENTERPRISES IS REASONABLE AND
        CONSISTENT WITH THE LANGUAGE AND PURPOSE OF
        THE COAL ACT ................................................................................... 7

CONCLUSION ....................................................................................................... 17

# TABLE OF AUTHORITIES

**CASES**                                                                                      **PAGE(s)**

Alaska Airlines, Inc. v. Brock,
    480 U.S. 678 (1987) ............................................................................................... 9, 12

Anker Energy Corp. v. Consolidation Coal Co.,
    177 F.3d 161 (3d Cir. 1999), cert denied, 528 U.S. 1003 (1999) ..................................... 6

Ass'n of Bituminous Contractors, Inc. v. Apfel,
    156 F.3d 1246 (D.C. Cir. 1998) ................................................................................. 16

Barnhart v. Peabody Coal Co.,
    537 U.S. 149 (2003) ............................................................. 12, 13, 13 n.6, 14

Barnhart v. Walton,
    535 U.S. 212 (2002) ............................................................................................... 16

Brown v. United States,
    327 F.3d 1198 (D.C. Cir. 2003) ................................................................................. 17

Buckley v. Valeo,
    424 U.S. 1 (1976) ................................................................................................... 9

Carbon Fuel Co. v. USX Corp.,
    891 F. Supp. 1186 (S.D. W.Va. 1995) ........................................................................ 2

Carnival Cruise Lines, Inc. v. United States,
    200 F.3d 1361 (Fed. Cir. 2000) ............................................................................ 9, 11

Chevron, U.S.A., Inc. v. Nat'l Res. Def. Council,
    467 U.S. 837 (1984) ............................................................................................... 16

Eastern Enterprises, Inc. v. Apfel,
    524 U.S. 498 (1998) .............................................................. 1-3, 6-11, 15, 16

Elgin Nat'l Indus. v. Barnhart,
    Nos. 04-5243 & 04-7094, 2005 U.S. App. LEXIS 7361 (D.C. Cir. Apr. 27, 2005) ...... 1, 8

Harper v. Virginia Dep't of Taxation,
    509 U.S. 86 (1993) ................................................................................................ 15

Holland v. Nat'l Mining Ass'n,
    309 F.3d 808 (D.C. Cir. 2002) ................................................................................. 16

Holland v. Pardee Coal Co.,
    269 F.3d 424 (4th Cir. 2001) ....................................................................... 16

Minnesota v. Mille Lacs Band of Chippewa Indians,
    526 U.S. 172 (1999) ..................................................................................... 12

Nell Jean Industries, Inc. v. Barnhart,
    224 F. Supp.2d 10 (D. D.C. 2002) ............................................................ 8, 15

Pittston Co. v. United States,
    368 F.3d 385 (4th Cir. 2004), cert. denied, 125 S.Ct. 1589 (2005) . 1, 8, 10, 12-14, 15, 16

Robinson v. Neil,
    409 U.S. 505, 507 (1973) ............................................................................ 15

In re Rockefeller Ctr. Properties, Inc. Securities Litigation,
    311 F.3d 198 (3d Cir. 2002) ......................................................................... 7

Shenango Inc. v. Apfel,
    307 F.3d 174 (3d Cir. 2002), cert denied 539 U.S. 958 (2003) .................. 6, 14

Sidney Coal Co., Inc. v. Massanari,
    221 F. Supp.2d 755 (E.D. K.Y. 2002), aff'd in part, rev'd in part, Sidney
    Coal, 427 F.3d 336 ..................................................................................... 8

Sidney Coal Co. v. Social Sec. Admin.,
    427 F.3d 336 (6th Cir. 2005) ............................................. 1, 6, 8, 11, 15-16

Skidmore v. Swift & Co.,
    323 U.S. 134 (1944) ..................................................................................... 17

Unity Real Estate Co. v. Hudson,
    178 F.3d 649 (3d Cir. 1999), cert denied, 528 U.S. 963 (1999) .................. 2, 3

Wheeling-Pittsburgh Steel Corp. v. Barnhart,
    229 F. Supp.2d 539 (N.D. W.Va. 2002) ..................................................... 8

**STATUTES**                                                   **PAGE(s)**

26 U.S.C. § 9701 ............................................................................... 3, 4, 4 n.2

26 U.S.C. § 9702 ................................................................................... 4

iv

26 U.S.C. § 9703 ............................................................................................ 4

26 U.S.C. § 9704 ............................................................................................ 5

26 U.S.C. § 9706 ............................................... 1, 5, 7, 10, 10 n.5, 12, 14-16

30 U.S.C. § 1231(c)(1) ............................................................................... 5 n.3

30 U.S.C. § 1232 ..................................................................................... 5, 5 n.3

20 C.F.R. § 422.603 ....................................................................................... 6

20 C.F.R. § 422.605 ....................................................................................... 6

138 Cong. Rec. 34001 .................................................................................. 13

138 Cong. Rec. 34002 ........................................................................ 13, 13 n.6

138 Cong. Rec. 34003 .................................................................................. 13

138 Cong. Rec. 34032 ............................................................................. 13 n.6

Pub. L. 102-486, § 19142 ............................................................................. 13

Pub. L. No. 103-296, § 108(h)(9)(A) ......................................................... 4 n.1

## STATEMENT OF NATURE AND STAGE OF PROCEEDING

In this action, plaintiffs Peabody Coal Company, LLC (formerly known as "Peabody Coal Company"), and Eastern Associated Coal Corporation ("EACC") challenge their responsibility for certain beneficiaries assigned to them by the defendant Commissioner of Social Security ("SSA" or "Commissioner") under the Coal Industry Retiree Health Benefit Act of 1992 ("Coal Act"), 26 U.S.C. §§ 9701-9722. Specifically, plaintiffs challenge SSA's decision to assign them beneficiaries who were initially assigned to Eastern Enterprises, Inc., or similarly situated coal operators, until the Supreme Court declared the assignments unconstitutional in Eastern Enterprises, Inc. v. Apfel, 524 U.S. 498, 504-12 (1998). According to the plaintiffs, SSA's decision to reassign beneficiaries rather than placing them permanently in the unassigned pool violates § 9706 of the Coal Act and §§ 702 and 706 of the Administrative Procedure Act.

The Plaintiffs' Complaint was filed on September 14, 2005. On March 10, 2006, the Trustees of the United Mine Workers of America Combined Benefit Fund filed an unopposed motion to intervene in this action.

## SUMMARY OF ARGUMENT

(1) SSA's assignment of beneficiaries to plaintiffs in light of the Supreme Court's decision in Eastern Enterprises is reasonable and consistent with the language and purpose of the Coal Act, and every court of appeals that has decided the issue has rejected the plaintiffs' challenge. See Sidney Coal Co. v. Social Sec. Admin., 427 F.3d 336 (6th Cir. 2005); Elgin Nat'l Indus. v. Barnhart, Nos. 04-5243 & 04-7094, 2005 U.S. App. LEXIS 7361 (D.C. Cir. Apr. 27, 2005); Pittston Co. v. United States, 368 F.3d 385

1

(4th Cir. 2004), cert. denied, 125 S.Ct. 1589 (2005). Accordingly, pursuant to Federal

Rule of Civil Procedure 12(b)(6), the Court should dismiss the Complaint in its entirety

for failure to state a claim upon which relief can be granted.

## STATEMENT OF FACTS

## STATUTORY BACKGROUND

A.    Pre-Act History Of UMWA Benefit Trusts

The Coal Act responded to a crisis in health care costs of coal industry retirees.

From 1946 to 1993, a series of collective bargaining agreements between coal mine

operators and the United Mine Workers of America ("UMWA"), often in the form of

National Bituminous Coal Wage Agreements ("NBCWAs"), created multi-employer

benefit plans that provided health care benefits to active and retired miners and to their

dependents, see Eastern, 524 U.S. at 504-11. Under these plans, plaintiffs and other coal

operators collectively promised benefits in return for such concessions as mechanization

of the mines to increase efficiency. See Carbon Fuel Co. v. USX Corp., 891 F. Supp. 1186,

1189 (S.D. W.Va. 1995).

A pivotal change in the treatment of miner retiree health benefits was effected by

the 1974 NBCWA between UMWA and the Bituminous Coal Operators' Association

("BCOA"). Eastern, 524 U.S. at 509. It was this agreement that, for the first time,

"explicitly guaranteed" lifetime health benefits to miners and their dependents. Unity Real

Estate Co. v. Hudson, 178 F.3d 649, 653 (3d Cir. 1999), cert denied, 528 U.S. 963 (1999).

Continued labor unrest and unresolved concerns over benefits, combined with "various

other circumstances—such as a decline in the amount of coal produced, the retirement of

2

a generation of miners, and rapid escalation of health care costs—quickly resulted in financial problems." Eastern, 524 U.S. at 510. In response to these financial difficulties and continued labor unrest, the remaining employers sought to bolster the 1974 NBCWA's commitment to lifetime benefits.

The result was the 1978 agreement between UMWA and BCOA in which signatory operators agreed to provide lifetime benefits for their own active and retired employees as well as for all "orphaned" miners whose employers had ceased coal operations or withdrawn from the agreements. Unity, 178 F.3d at 653. Signatory operators were required to contribute enough to pay for the promised benefits and to remain liable as long as they remained in the coal industry. Eastern, 524 U.S. at 510. Despite those efforts, the Benefit Plans continued to suffer financially in the 1980's and early 1990's due to increased health-care costs and the number of coal operators ceasing their contributions to the plans. Id. at 511.

B.    The Coal Industry Retiree Health Benefit Act

In response to the financial problems faced by the plans, Congress passed the Coal Industry Retiree Health Benefit Act of 1992 ("Coal Act"), 26 U.S.C. §§ 9701-9722. The Coal Act was intended "to remedy problems with the provision and funding of health care benefits with respect to the beneficiaries of [coal industry] multiemployer benefit plans," to ensure for "sufficient operating assets for such plans," and "to provide for the continua-tion of a privately financed self-sufficient program for the delivery of health care benefits to the beneficiaries of such plans." 26 U.S.C. § 9701 note. To achieve these goals, the Act restructured the provision of health benefits to retired miners and their dependents by, inter

3

alia, creating two new private multi-employer plans, including the plan at issue here, the

United Mine Workers of America Combined Benefit Fund ("Combined Fund"), see 26

U.S.C. § 9702(a).

The Combined Fund provides "substantially the same" medical benefits to retirees

and their dependants as the 1950 and 1974 Plans.    26 U.S.C. § 9703(b)(1).    The

Commissioner of Social Security[1] must assign, if possible, each coal industry retiree who

is an eligible beneficiary "to a signatory operator which (or any related person with respect

to which) remains in business" (i.e., which "conducts or derives revenue from any business

activity, whether or not in the coal industry," 26 U.S.C. § 9701(c)(7)).[2]  The assignments

are to be made in the following order:

> (1) First, to the signatory operator which–
>
>> (A) was a signatory to the 1978 coal wage agreement or any
>> subsequent coal wage agreement, and

---

[1] The government's duties under the Coal Act were initially assigned to the
Department of Health and Human Services but were later transferred to the
Commissioner of Social Security.  Pub. L. No. 103-296, § 108(h)(9)(A), 108 Stat. 1481,
1487 (1994).  We use the terms "Commissioner of Social Security" and "the SSA"
interchangeably.

[2]  Under the Coal Act, a "signatory operator" is a person who was or is a
signatory to certain coal wage agreements.  See 26 U.S.C. §§ 9701(b)(1) & (3),
9701(c)(1).  A "related person" to a signatory operator must be "a member of the
controlled group of corporations . . . which includes such signatory operator;" "a trade
or business which is under common control . . . with such signatory operator;" or "any
other person who is identified as having a partnership [but not strictly a limited
partnership] interest or joint venture with a signatory operator in a business within the
coal industry." 26 U.S.C. § 9701(c)(2)(A).  These relationships are determined as of
July 20, 1992. 26 U.S.C. § 9701(c)(2)(B).

4

(B) was the most recent signatory operator to employ the coal industry retiree in the coal industry for at least 2 years.

(2) Second, if the retiree is not assigned under paragraph (1), to the signatory operator which–

(A) was a signatory to the 1978 coal wage agreement or any subsequent coal wage agreement, and

(B) was the most recent signatory operator to employ the coal industry retiree in the coal industry.

(3) Third, if the retiree is not assigned under paragraph (1) or (2), to the signatory operator which employed the coal industry retiree in the coal industry for a longer period of time than any other signatory operator prior to the effective date of the 1978 coal wage agreement.

26 U.S.C. § 9706(a). Operators must pay annual premiums for their assigned beneficiaries.

26 U.S.C. § 9704. If the Commissioner of Social Security cannot locate an appropriate assignee for an eligible beneficiary under any of the three specified tiers, the beneficiary is considered "unassigned." 26 U.S.C. § 9704(a)(3), (d). Benefits for the unassigned pool are funded through asset transfers from the UMWA 1950 Pension Plan and the Abandoned Mine Land Reclamation Fund[3] and, if such transfers are not sufficient, through premiums assessed against all assigned operators. 26 U.S.C. §§ 9704(d), 9705; 30 U.S.C. § 1232(h).

The Coal Act also provides for administrative review of assignments. Within 30 days of receipt of a notice of assignment of beneficiaries, an assigned operator may request from the Commissioner detailed information as to the work history of the miner and the basis of the assignment. 26 U.S.C. § 9706(f)(1). The Coal Act and regulations also allow

---

[3] The Surface Mining and Control Act of 1977 established this fund mainly for "reclamation and restoration of land and water resources adversely affected by past coal mining." 30 U.S.C. § 1231(c)(1). The fund is financed through a reclamation fee paid by coal operators for each ton of coal produced. 30 U.S.C. § 1232(a).

assigned operators to request a review of the assignment within 30 days from receipt of either the notice of assignment or the additional information requested, if any.  26 U.S.C. § 9706(f)(2); see also 20 C.F.R. § 422.603.  Thus, unless either the assigned operator (1) requests additional information concerning an assignment within 30 days of the notice of assignment, or (2) requests a review from the Commissioner within 30 days of the receipt of the notice of assignment, the assignment becomes final.  20 C.F.R. § 422.605.

C.    The Supreme Court's Decision in Eastern Enterprises and SSA's Reassignment of Beneficiaries

On June 25, 1998, the Supreme Court in a 4-4-1 plurality decision held that the Coal Act was unconstitutional as applied to signatory operators that had not signed the 1974 or subsequent wage agreement.  Eastern, 524 U.S. at 532-37; see also Anker Energy Corp. v. Consolidation Coal Co., 177 F.3d 161, 172 (3d Cir. 1999), cert. denied, 528 U.S. 1003 (1999).  The Supreme Court found that the necessary expectation of lifetime benefits had not been created by any agreement prior to 1974, and that companies that had left the system before that time could not be charged with contributing toward their funding. Eastern, 524 U.S. at 535.

As a result of Eastern Enterprises, SSA vacated the assignments which had been made to operators who had not signed the 1974 or subsequent wage agreement (or had a related party that signed such agreement).  See Shenango Inc. v. Apfel, 307 F.3d 174, 184 (3d Cir. 2002), cert. denied 539 U.S. 958 (2003).  SSA then temporarily designated these beneficiaries, whose assignments had been vacated, as "unassigned," while it reexamined their employment history to determine if they were assignable to other signatory operators

6

under the Act.  See Sidney Coal Co. v. Social Sec. Admin., 427 F.3d 336, 341 (6th Cir.

2005).  Based on this review, SSA assigned each miner, where possible, to the signatory

operator who (1) had signed the 1974 or subsequent agreement promising life-time health

benefits, (2) had employed the miner, and (3) had the highest priority under the Act, as

limited by the Supreme Court's decision.  Id.  In cases where SSA could not identify an

assignable signatory operator (or its related person) that was still in business,  SSA

designated the miners to be permanently unassigned and placed them in the unassigned

pool.

## ARGUMENT

Dismissal under Federal Rule of Civil Procedure 12(b)(6) is appropriate if "it

appears beyond doubt that plaintiff can prove no set of facts in support of his claim

which would entitle him to relief." In re Rockefeller Ctr. Properties, Inc. Securities

Litigation, 311 F.3d 198, 215 (3d Cir. 2002).  The Court accepts as true the well-

pleaded allegations of the complaint and draws all reasonable factual inferences in the

light most favorable to the non-moving party.  Id.  However, this requirement does not

extend to, and the Court need not credit, a complaint's "bald assertions or legal

conclusions." Id. at 216.

I.    THE SSA'S ASSIGNMENT OF BENEFICIARIES TO PLAINTIFFS AFTER
      EASTERN ENTERPRISES IS REASONABLE AND CONSISTENT WITH
      THE LANGUAGE AND PURPOSE OF THE COAL ACT.

Both counts of the plaintiffs' Complaint are centered around their claim that

SSA's decision to reassign to them an unspecified number of beneficiaries in light of the

Supreme Court's decision in Eastern Enterprises, Inc. v. Apfel, 524 U.S. 498 (1998),

7

violates § 9706 of the Coal Act and §§ 702 and 706 of the APA. Plaintiffs allege that each of these beneficiaries had initially been assigned to Eastern Enterprises or an operator like Eastern who had not signed the 1974 or any subsequent wage agreement (and were not related to a company that had signed such agreement) and were reassigned to them after the Supreme Court's decision in Eastern Enterprises. Pls.' Compl. ¶ 15, D.I. 1. Plaintiffs argue that SSA has no authority to make such reassignments. Instead, they insist that the beneficiaries should have been placed in the unassigned pool, where the cost of the health benefits would be spread among all assigned signatory operators. Id. ¶ 18, D.I. 1.

This claim has no merit. The reassignment procedures followed by SSA after Eastern Enterprises are consistent with both the language and purpose of the Coal Act and have been upheld by three courts of appeals and two district courts. See Sidney, 427 F.3d 336 (6th Cir. 2005); Elgin Nat'l Indus. v. Barnhart, Nos. 04-5243 & 04-7094, 2005 U.S. App. LEXIS 7361 (D.C. Cir. Apr. 27, 2005); Pittston Co. v. United States, 368 F.3d 385 (4th Cir. 2004), cert. denied, 125 S.Ct. 1589 (2005); Nell Jean Industries, Inc. v. Barnhart, 224 F. Supp.2d 10, 26 (D.D.C. 2002); Wheeling-Pittsburgh Steel Corp. v. Barnhart, 229 F. Supp.2d 539, 554 (N.D.W.Va. 2002). The only court to have decided the issue in the plaintiffs' favor was subsequently reversed by the Sixth Circuit. Sidney Coal Co., Inc. v. Massanari, 221 F. Supp.2d 755 (E.D. K.Y. 2002), aff'd in part, rev'd in part, Sidney, 427 F.3d 336.

It is uncontested that the Coal Act, by itself, unambiguously required that the beneficiaries at issue here be assigned to Eastern Enterprises and other Eastern-like

8

companies. It is also uncontested that the Supreme Court's decision in Eastern

Enterprises held that such assignments were unconstitutional. The dispute in this case is

over the correct construction of the Coal Act in light of that decision.

The parties propose two different constructions of the statute in light of Eastern

Enterprises. Plaintiffs propose that when Eastern Enterprises renders it unconstitutional

to assign a beneficiary to a signatory operator, the beneficiary must remain unassigned.

Pls.' Compl. ¶ 18, D.I. 1. The Commissioner concluded that, for purposes of

assignment, it was required to ignore any operator to which an assignment would be

unconstitutional (such as an Eastern-like operator), resulting in another operator (here,

one of the plaintiffs) being the "highest priority" and therefore the proper assignee.

The Commissioner's decision reflects the correct interpretation of the statute

under the Supreme Court's longstanding doctrine of severability. This doctrine applies

whenever an application or provision of a statute is held unconstitutional. When that

happens, "'[u]nless it is evident that the Legislature would not have enacted those

provisions which are within its power, independently of that which is not, the invalid

part may by dropped if what is left is fully operative as a law.'" Alaska Airlines, Inc. v.

Brock, 480 U.S. 678, 684 (1987) (quoting Buckley v. Valeo, 424 U.S. 1, 108 (1976)

(per curiam)). Although most severability cases, such as Alaska Airlines, concern the

severing of an unconstitutional provision of a statute, as opposed to the unconstitutional

application of a statute, as presented here, the same logic applies. See Carnival Cruise

Lines, Inc. v. United States, 200 F.3d 1361, 1367 (Fed. Cir. 2000) (leaving law in effect

"even after the invalid application has been excised"). There is no question that

9

severability analysis applies here; Eastern Enterprises held certain narrow applications of the Coal Act unconstitutional, and the question is how to interpret the remainder of the statute in light of that fact.[4]

The way that the Commissioner severed the unconstitutional application of the Coal Act from the remainder of the statute is straightforward and logical. As described above, the Coal Act creates a hierarchical list of coal operators that employed the miner and orders the Commissioner to assign the miner to the first operator in that hierarchy that remains in business.[5] The way to sever unconstitutional assignments from the remaining constitutional applications of the Coal Act is obvious – remove Eastern-like operators from the list of potential assignees (just as out-of-business operators are removed). That is precisely what the Commissioner did. Once Eastern-like operators were removed from consideration, plaintiffs became the operators with the highest priority under the statute for the beneficiaries at issue here, and the Commissioner made assignments accordingly:

> In applying § 9706 to the retirees left unassigned as the result of the decision in Eastern Enterprises, the Commissioner has not violated or disturbed the structure

---

[4] Plaintiffs do not contend that, as a result of Eastern Enterprises, the entire Coal Act is rendered invalid, which would be the result if the unconstitutional applications of the Coal Act to Eastern-like operators were not severable from the remaining applications of the Act. Thus, the question here is not whether the Coal Act is severable but rather, given that it is severable, whether the Commissioner has properly interpreted the statute that remains after the unconstitutional applications are severed.

[5] As described above, to facilitate assigning the maximum number of beneficiaries to a prior responsible coal operator, employment by a coal operator may be attributed to any "related person" to that coal operator. See 26 U.S.C. § 9706(b)(1)(A).

> of the Coal Act. She merely removed from the pool of
> possible contributors those coal operators that could not
> constitutionally be required to contribute. Among the
> remaining contributors, she followed the Coal Act's
> assignment structure to the letter. In short, in making
> reassignments, the Commissioner did not change the
> wording of the statute, but merely followed the Supreme
> Court's ruling that the Coal Act may only apply to a
> narrower group of persons than previously thought.

Pittston, 368 F.3d at 404; see also Sidney, 427 F.3d at 347 ("By assigning each Eastern

beneficiary to the operator to whom they should have been assigned in 1993, i.e., only

those operators that had signed a 1974 NBCWA or later agreement, the SSA applied the

criteria in a manner that allowed the Act to 'function effectively and serve [its] purpose

even after the invalid application has been excised.'") (quoting Carnival Cruise Lines,

200 F.3d at 1367).

The plaintiffs propose severing the statute in a different way. Under the

plaintiffs' interpretation, whenever a beneficiary was originally (albeit erroneously)

assigned to an Eastern-like operator, the entire hierarchical assignment scheme enacted

by Congress is ignored, and the beneficiary remains permanently unassigned. There are

two dispositive flaws in this theory.

First, the plaintiffs' reading of the statute throws out the baby with the bath

water by invalidating numerous constitutional applications of the statute along with

those held unconstitutional in Eastern Enterprises. The assignments at issue here are a

prime example. Plaintiffs do not challenge the constitutionality of the assignments to

them. Thus, the plaintiffs' interpretation of the statute prevents the Commissioner from

11

making assignments that were unquestionably within the power of Congress to enact.

Since the purpose of severability analysis is to sever only unconstitutional applications

or provisions of a statute, leaving intact whatever was within congressional power, the

plaintiffs' interpretation goes too far. See Pittston, 368 F.3d at 405 ("[T]he Coal Act

remains operative as to non-Eastern-like coal companies.").

Second, severability analysis "is essentially an inquiry into legislative intent,"

Minnesota v. Mille Lacs Band of Chippewa Indians, 526 U.S. 172, 191 (1999), the

overriding purposes of which is to have the statute (without the unconstitutional

provision) "function in a manner consistent with the intent of Congress," Alaska

Airlines, 480 U.S. at 685. The Supreme Court recently explained the purpose of the

Coal Act in Barnhart v. Peabody Coal Co., 537 U.S. 149 (2003), a case involving the

correct interpretation of the very statutory provision at issue here, 26 U.S.C. § 9706(a).

Section 9706(a) states that the Commissioner "shall" assign beneficiaries according to

the hierarchy before October 1, 1993. See Peabody, 537 U.S. at 155. The plaintiff in

Peabody argued that any later assignment must be invalid and that therefore any

beneficiary not assigned by October 1, 1993, must be placed in the unassigned

beneficiary pool. The Supreme Court disagreed. It noted that "nothing indicates that

Congress even foresaw that some beneficiaries matchable with operators still in

business might not be assigned before October 1, 1993," 537 U.S. at 164-65, making the

absence of such an assignment "nothing more than a case unprovided for," id. at 169.

Given this statutory gap, the Supreme Court looked to the legislative purpose:

This much is certain: the Coal Act rests on Congress's

12

> stated finding that it was necessary to "identify persons
> most responsible for plan liabilities," and on its express
> desire to "provide for the continuation of a privately
> financed self-sufficient program for the delivery of health
> care benefits," Energy Policy Act of 1992, Pub. L. 102-
> 486, § 19142, 106 Stat. 3037.  In the words of Senator
> Wallop's report delivered shortly before enactment, the
> statute is "designed to allocate the greatest number of
> beneficiaries in the Plans to a prior responsible operator.
> For this reason, definitions are intended by the drafters to
> be given broad interpretation to accomplish this goal."
> 138 Cong. Rec. 34001 (1992).

Peabody, 537 U.S. at 171-72 (footnote omitted), quoted in Pittston, 368 F.3d at 404-05;

accord Peabody, 537 U.S. at 153 (stating that the Coal "Act requires the Commissioner

to assign, where possible, every coal industry retiree to a 'signatory operator'")

(emphasis added); id. at 165 (noting that the statutory provision for unassigned

beneficiaries is for when no assignable operator remains in business and that the Coal

Act was designed so that "'the number of unassigned beneficiaries is kept to an absolute

minimum'") (quoting 138 Cong. Rec. 34,003 (1992) (Sen. Wallop)).[6]  Given this

express statutory purpose, the Supreme Court held that the Coal Act must be interpreted

to allocate the greatest number of beneficiaries possible to a responsible operator.  Id. at

171-72.  That goal was met by allowing the Commissioner to make assignments even

---

[6] See Peabody, 537 U.S. at 166 n.10 (noting post-enactment legislative history
emphasizing the desire that every possible beneficiary be assigned); id. at 171 n.14
(noting that it would be unfair and inequitable to leave assignable beneficiaries
unassigned); see also 138 Cong. Rec. 34,002 (1992) (Sen. Wallop) ("overriding
purpose" of Act's assignment provisions is "to find and designate a specific obligor for
as many beneficiaries in the Plans as possible"); id. at 34,032 (Sen. Rockefeller) ("[T]he
basic funding mechanism of this legislation generally requires premium payments from
those for whom the retirees worked.  These are the responsible companies.").

after October 1, 1993, rather than mandating that all beneficiaries not assigned by that date remain permanently unassigned.

The Supreme Court's decision in <u>Peabody</u> was presaged by the Third Circuit's decision in <u>Shenango, Inc. v. Apfel</u>, 307 F.3d 174 (3d Cir. 2002), which reached the same conclusion regarding the language of section 9706(a) of the Coal Act. In deciding the issue, the Third Circuit emphasized the Coal Act's clear preference for assignment to the most responsible operator: "[T]he Coal Act's key objective is to ensure that the costs of providing retirement benefits will, so far as possible, be borne by the private parties most responsible for creating retired miners' expectations of lifetime health benefits." <u>Id.</u> at 195. Given this congressional intent, the Third Circuit concluded that preventing SSA from making assignments after October 1, 1993, would "surely frustrate" the objectives of the Coal Act by allowing "otherwise assignable beneficiaries" to be "retained in the orphan retiree pool." <u>Id.</u> at 195-96.

The Supreme Court's decision in <u>Peabody</u> and the Third Circuit's decision in <u>Shenango</u> settle the question that the legislative intent was to have assignable beneficiaries, like those at issue in this case, assigned to responsible coal operators who employed them, like plaintiffs, rather than have them remain permanently unassigned. Indeed, the basic lesson of <u>Peabody</u> and <u>Shenango</u> is that any "case unprovided for" in this provision of the Coal Act should be addressed, to the extent possible, in the way that ensures that the largest number of beneficiaries will be assigned to responsible coal operators, rather than being permanently unassigned.

The Coal Act contains other specific guidance relevant here. As part of the

14

Act's administrative appeals provisions, Congress recognized that an initial erroneous assignment to a signatory operator could, in fact, be corrected by reassignment. If the Commissioner determines that "an assignment was in error, . . . the Commissioner shall review the beneficiary's record for reassignment under subsection (a)" of section 9706. 26 U.S.C. § 9706(f)(3); see also Shenango, 307 F.3d at 190 n.10. The Commissioner's actions here are analogous, since the initial assignment of beneficiaries to Eastern Enterprises was unconstitutional and therefore erroneous. Because Congress intended such mistakes to be corrected in the way that maximized the number of assigned beneficiaries, it is reasonable to assume that reassignment would be a proper remedy under the statute. See Sidney Coal, 427 F.3d at 350 ("Given Congress's stated purpose in enacting the Coal Act—to identify persons most responsible for plan liabilities—the SSA's construction of the statute post-Eastern Enterprises effectuated this intent by reassigning the Eastern beneficiaries to the most responsible operator, as opposed to stretching the unassigned category to cover non-'orphaned' beneficiaries.").

In sum, the SSA's assignment of the disputed miners to plaintiffs is entirely consistent with the Coal Act's structure, text, and purpose. Because "'the constitutional decisions of [the Supreme] Court'" are "'retrospective,'" Harper v. Virginia Dep't of Taxation, 509 U.S. 86, 94 (1993) (quoting Robinson v. Neil, 409 U.S. 505, 507 (1973)), "[i]t had never been constitutional for SSA to assign beneficiaries to Eastern-type companies under section 9706(a)(3) of the Coal Act." Nell Jean, 224 F. Supp.2d at 26; see also Sidney, 427 F.3d at 347; Pittston, 368 F.3d at 403. In response to the Supreme Court's invalidation of the assignments, SSA chose to reassign the beneficiaries to the

15

appropriate responsible operator pursuant to § 9706(a) and consistent with the requirements of the constitution. See Sidney, 427 F.3d at 347; Pittston, 368 F.3d at 403-04. This interpretation is consistent with the language of the Act, furthers the Act's goal of assigning beneficiaries to responsible operators whenever possible, and keeps the number of unassigned beneficiaries to an absolute minimum. Sidney, 347 F.3d at 350; Pittston, 427 F.3d at 404.

Finally, even if there were any ambiguity regarding the proper implementation of the statute under these circumstances, SSA's interpretation of the Coal Act, a complex regulatory statute whose administration Congress entrusted to the Commissioner, is entitled to deference. Sidney, 427 F.3d at 346, 351 (applying analysis from Chevron, U.S.A., Inc. v. Nat'l Res. Def. Council, 467 U.S. 837 (1984), and determining that SSA "permissibly construed the statute"); Pittston, 368 F.3d at 402, 405 (applying Chevron to reassignments after Eastern and concluding that the Commissioner's interpretation of the statute "was a permissible construction of the Coal Act."); Holland v. Nat'l Mining Ass'n, 309 F.3d 808, 817 (D.C. Cir. 2002) (Chevron deference applies to Commissioner's "own reasoned judgment on the meaning of the statute"); Holland v. Pardee Coal Co., 269 F.3d 424, 431 n.8 (4th Cir. 2001) (Chevron analysis applies to SSA's interpretation of the Coal Act; question resolved at Chevron step one); Ass'n of Bituminous Contractors, Inc. v. Apfel, 156 F.3d 1246, 1252 (D.C. Cir. 1998) (deferring to Commissioner's interpretation of the Coal Act); see also Barnhart v. Walton, 535 U.S. 212, 225 (2002) (court should defer to Commissioner's interpretation when statute is complex). For the same reasons, SSA's interpretation of the Act should prevail even

16

if this Court applies the lower level of deference articulated by the Supreme Court in

Skidmore v. Swift & Co., 323 U.S. 134 (1944).  See Brown v. United States, 327 F.3d

1198, 1206 (D.C. Cir. 2003) (granting Skidmore deference to an agency's "persuasive

solution to an unforeseen problem" in a statutory scheme).

## CONCLUSION

For the above stated reasons, this Court should dismiss plaintiffs' Complaint

with prejudice for failure to state a claim.

17

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

COLM F. CONNOLLY
United States Attorney

/s/Patricia C. Hannigan
Patricia C. Hannigan
Assistant United States Attorney
Delaware Bar I.D. No. 2145
The Nemours Building
1007 Orange Street, Suite 700
P. O. Box 2046
Wilmington, DE 19899-2046
(302) 573-6277
Patricia.Hannigan@usdoj.gov

RICHARD G. LEPLEY
Assistant Branch Director
Civil Division, Federal Programs Branch

/s/Eric R. Womack
Eric R. Womack
IL Bar I.D. No. 6279517
Trial Attorney
U. S. Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Ave., N.W.
Washington, D.C. 20530
(202) 514-4020
Eric.Womack@usdoj.gov

*Attorneys for Defendant Commissioner
Of Social Security*

18

## CERTIFICATE OF SERVICE

I hereby certify that on **March 14, 2006**, I electronically filed a **BRIEF IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS** with the Clerk of Court using CM/ECF. Notification of such filing will be electronically mailed to the following:

**Jason A. Cincilla, Esquire**
Morris, Nichols, Arsht & Tunnell
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jcincilla@mnat.com

*Attorney for Peabody Coal Company, LLP
& Eastern Associated Coal Corp.*

**Carolyn Shelly Hake, Esquire**
Ashby & Geddes
222 Delaware Avenue
P.O. Box 1150
Wilmington, DE 19899
(302) 654-1888
chake@ashby-geddes.com

*Attorney for Intervenor Defendant Trustees
of the United Mine Workers of America
Combined Benefit Fund*

COLM F. CONNOLLY
United States Attorney

/s/Patricia C. Hannigan
Patricia C. Hannigan
Assistant United States Attorney
Delaware Bar I.D. No. 2145
The Nemours Building
1007 Orange Street, Suite 700
P. O. Box 2046
Wilmington, DE 19899-2046
(302) 573-6277
Patricia.Hannigan@usdoj.gov