IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

PEABODY COAL COMPANY, LLC et al.,

          Plaintiffs,

   v.

JO ANNE B. BARNHART, Commissioner of
Social Security,

          Defendant,

   and

MICHAEL H. HOLLAND et al., Trustees of
the UMWA Combined Benefit Fund,

          Defendant-Intervenors.

No. 05-671-SLR

**OPENING BRIEF IN SUPPORT OF DEFENDANT-INTERVENOR
TRUSTEES' MOTION FOR SUMMARY JUDGMENT**

ASHBY & GEDDES
Philip Trainer, Jr. (# 2788)
Carolyn S. Hake (# 3839)
222 Delaware Avenue
P.O. Box 1150
Wilmington, DE  19899
(302) 654-1888

David W. Allen
Larry D. Newsome
Christopher F. Clarke
Senior Assistant General Counsel
UMWA Health & Retirement Funds
Office of the General Counsel
2121 K Street, N.W.
Washington, D.C.  20037
(202) 521-2238

Attorneys for Defendant-Intervenors Michael H. Holland et al.,
Trustees of the UMWA Combined Benefit Fund

Dated:  March 31, 2006

# TABLE OF CONTENTS

**PAGE**

TABLE OF CITATIONS ............................................................................ ii

STATEMENT OF NATURE AND STAGE OF PROCEEDINGS ..................................... 1

SUMMARY OF ARGUMENT ..................................................................... 2

STATEMENT OF FACTS ......................................................................... 4

     A.     Background of the Coal Act ....................................................... 4

     B.     Structure of the Combined Fund .................................................. 6

     C.     <u>Eastern Enterprises v. Apfel</u> and SSA's Response ....................................... 8

ARGUMENT ...................................................................................... 10

     I.     SSA Properly Assigned <u>Eastern</u> Beneficiaries to Peabody ......................... 11

           A.     In Determining How the Coal Act Should Be
                 Applied After <u>Eastern</u>, this Court Should Focus its
                 Attention on Evidence of Congressional Purpose ......................... 11

           B.     SSA's Assignment of <u>Eastern</u> Beneficiaries to
                 Peabody Best Effectuates Congress's Purpose ............................. 13

           C.     SSA's Assignment of <u>Eastern</u> Beneficiaries to
                 Peabody Was Appropriate Given the Retroactive
                 Nature of Constitutional Decisions of the Supreme Court ............ 15

     II.     SSA's Decision to Assign <u>Eastern</u> Beneficiaries to
               Peabody Deserves Deference ..................................................... 18

CONCLUSION .................................................................................... 20

## TABLE OF CITATIONS

**CASES:**                                                                 **PAGE(S)**

Alaska Airlines, Inc. v. Brock, 480 U.S. 678 (1987)......................................2, 11

Apogee Coal Co. v. Holland, 296 F.3d 1294 (11th Cir. 2002)........................7, 8

Ass'n of Bituminous Contractors, Inc. v. Apfel, 156 F.3d 1246 (D.C. Cir. 1998)...........19

Barnhart v. Peabody Coal Co., 537 U.S. 149 (2003)................................. *passim*

Carnival Cruise Lines, Inc. v. United States, 200 F.3d 1361 (Fed. Cir. 2000)..................11

Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc., 467 U.S. 837 (1984) ......3, 18, 19

Coraggioso v. Ashcroft, 355 F.3d 730 (3d Cir.), cert. denied, 542 U.S. 920 (2004).....3, 18

Eastern Enterprises v. Apfel, 524 U.S. 498 (1998)...................................... *passim*

Elgin Nat'l Indus. v. Barnhart, Nos. 04-5243 & 04-7094, 2005 U.S. App.
      LEXIS 7361 (D.C. Cir. Apr. 27, 2005)...............................................2, 10

Harper v. Virginia Department of Taxation, 509 U.S. 86 (1993)..................2, 17

Holland v. Nat'l Mining Ass'n, 309 F.3d 808 (D.C. Cir. 2002).........................19

Holland v. Pardee Coal Co., 269 F.3d 424 (4th Cir. 2001) ........................15, 19

Nell Jean Indus. v. Barnhart, 224 F. Supp. 2d 10 (D.D.C. 2002) ...............10, 17

New York v. United States, 505 U.S. 144 (1992)...............................................11

Pittston Co. v. United States, 368 F.3d 385, 401-05 (4th Cir. 2004), cert. denied,
      125 S. Ct. 1589 (2005)........................................................................ *passim*

Regan v. Time, Inc., 468 U.S. 641 (1984) ........................................................11

Rivers v. Roadway Express, Inc., 511 U.S. 298 (1994) ..........................2, 16, 17

Robinson v. Neil, 409 U.S. 505 (1973)..............................................................16

Shenango, Inc. v. Apfel, 307 F.3d 174 (3d Cir. 2002),
      cert. denied, 539 U.S. 958 (2003) ...................................................3, 4, 8

Sidney Coal Co. v. Massanari, 221 F. Supp. 2d 755 (E.D. Ky. 2002),
        rev'd in relevant part, 427 F.3d 336, 346-51 (6th Cir. 2005),
        cert. denied, 74 U.S.L.W. 3530 (2006) ............................................................10, 18

Sidney Coal Co. v. Social Sec. Admin., 427 F.3d 336 (6th Cir. 2005),
        cert. denied, 74 U.S.L.W. 3530 (2006) ........................................................ *passim*

Wheeling-Pittsburgh Steel Corp. v. Barnhart, 229 F. Supp. 2d 539
        (N.D. W. Va. 2002) ....................................................................................10

**STATUTES:**

Coal Industry Retiree Health Benefit Act of 1992
        26 U.S.C. §§ 9701-9722 ....................................................................................1

        § 9701...................................................................................................5
        § 9701(c)(2) ........................................................................................6
        § 9704(a)(1)-(3) .................................................................................7
        § 9704(b)(2) ........................................................................................7
        § 9704(d) .............................................................................................7
        § 9704(f).............................................................................................7
        § 9705(a) .............................................................................................7
        § 9705(b) .............................................................................................7
        § 9706...............................................................................................15, 17
        § 9706(a) ..........................................................................................6, 19
        § 9706(a)(1)-(3) ...........................................................................*passim*

        30 U.S.C. § 1232(h) .........................................................................7

Energy Policy Act of 1992, Pub. L. No. 102-486

        § 19142(a)(2) ..............................................................................5, 14

**LEGISLATIVE HISTORY:**

138 Cong. Rec. 20120 (1992) ....................................................................6
138 Cong. Rec. 34001 (1992) ....................................................................6
138 Cong. Rec. 34002 (1992) ..................................................................15
138 Cong. Rec. 34003 (1992) ..................................................................14

## STATEMENT OF NATURE AND STAGE OF PROCEEDINGS

Plaintiff coal operators Peabody Coal Company, LLC and Eastern Associated Coal Corporation (collectively, "Peabody") seek to avoid paying statutorily-imposed health benefit premiums for certain of their former mine workers and those workers' family members who are beneficiaries of the UMWA Combined Benefit Fund ("Combined Fund"). This lawsuit raises a single issue of law for this Court to resolve under the Coal Industry Retiree Health Benefit Act of 1992 (the "Coal Act"), 26 U.S.C. §§ 9701-9722. Specifically, this Court is being asked to determine whether defendant Commissioner of Social Security ("SSA") acted within the authority conferred by the Coal Act in assigning to Peabody beneficiaries whose assignments to other coal operators had been voided as a result of the Supreme Court's decision in Eastern Enterprises v. Apfel, 524 U.S. 498 (1998).

Peabody initially filed this lawsuit only against SSA. (D.I. 1). The Trustees moved to intervene in this case, without opposition, on March 10, 2006. (D.I. 6.) On March 14, 2006, SSA filed a motion to dismiss and brief in support in which SSA set forth its reasons why its assignments of Eastern beneficiaries to Peabody are lawful and why this Court should dismiss the complaint. (D.I. 9, 10).[1] On March 15, 2006, the Court granted the Trustees' motion to intervene and accepted the Trustees' Answer for filing.

---

[1] The Trustees use the term "Eastern beneficiaries" in this brief to refer to Combined Fund beneficiaries whom SSA initially assigned to Eastern Enterprises and similarly situated operators pursuant to § 9706(a)(3) of the Coal Act and whose assignments were voided by SSA after the Supreme Court's decision in Eastern.

On March 17, 2006, with the Trustees in the case, the parties filed a joint motion

to set a briefing schedule for the briefing of dispositive motions. (D.I. 12.) Four days

later, the Court granted the joint motion, thereby adopting the parties' proposed deadlines

for the filing of dispositive motions and supporting briefs. The Trustees have filed the

accompanying motion for summary judgment and this brief in accordance with the

Court's scheduling order.

## SUMMARY OF ARGUMENT

1.     It is well settled that SSA's decision to assign Eastern beneficiaries to coal

operators such as Peabody is based on a permissible construction of the Coal Act. All

three appellate courts that have considered the question — the U.S. Courts of Appeals for

the Fourth, Sixth and District of Columbia Circuits — have upheld SSA's authority to

make such assignments and have rejected the position taken by Peabody here. Sidney

Coal Co. v. Social Sec. Admin., 427 F.3d 336, 346-351 (6th Cir. 2005), cert. denied, 74

U.S.L.W. 3530 (2006); Elgin Nat'l Indus. v. Barnhart, Nos. 04-5243 & 04-7094, 2005

U.S. App. LEXIS 7361 (D.C. Cir. Apr. 27, 2005); Pittston Co. v. United States, 368 F.3d

385, 401-05 (4th Cir. 2004), cert. denied, 125 S. Ct. 1589 (2005).

2.     SSA's assignment of Eastern beneficiaries to Peabody after the Supreme

Court's ruling in Eastern Enterprises v. Apfel, 524 U.S. 498 (1998), is consistent with the

retroactivity principles set forth in the Supreme Court's rulings in Harper v. Virginia

Department of Taxation, 509 U.S. 86 (1993), and Rivers v. Roadway Express, Inc., 511

U.S. 298 (1994), and with the principle set forth in Alaska Airlines, Inc. v. Brock, 480

U.S. 678, 685-87 (1987), that when part of a statute is deemed unconstitutional, the

constitutionally offensive provision or application of the statute is excised and the
remaining provisions continue to operate.

      3.     SSA's assignment of <u>Eastern</u> beneficiaries to Peabody is consistent with
clear congressional intent.  As the Supreme Court recognized in another case brought by
Peabody challenging certain of its beneficiary assignments, Congress intended to impose
premium obligations on operators that actually benefited from the miners' labor, to limit
the number of unassigned beneficiaries, and to have Combined Fund beneficiaries' health
care costs covered, where possible, through a privately-financed system — in short
Congress intended a "pay for your own" principle.  <u>Barnhart v. Peabody Coal Co.</u>, 537
U.S. 149, 153, 159 n.6, 165-166, 171 (2003); <u>see also</u> <u>Shenango, Inc. v. Apfel</u>, 307 F.3d
174, 195-96 (3d Cir. 2002), <u>cert. denied</u>, 539 U.S. 958 (2003).

      4.     SSA's assignment of <u>Eastern</u> beneficiaries to Peabody is based on a
permissible construction of the Coal Act and should be deferred to by this Court.  <u>See</u>
<u>generally</u>, <u>Chevron U.S.A. Inc. v. Nat'l Res. Def. Council, Inc.</u>, 467 U.S. 837, 843
(1984); <u>Coraggioso v. Ashcroft</u>, 355 F.3d 730, 733 (3d Cir.), <u>cert. denied</u>, 542 U.S. 920
(2004); <u>Pittston</u>, 368 F.3d at 402, 404 n.3.

### STATEMENT OF FACTS[2]

The history of the health care crisis in the coal industry and the events leading to enactment of the Coal Act have been reviewed at length by the Supreme Court and the Court of Appeals. See, e.g., Peabody, 537 U.S. at 153-55; Eastern, 524 U.S. at 504-15; Shenango, Inc., 307 F.3d 174, 177-80 (3d Cir. 2002). The Trustees summarize below the background leading to passage of the Coal Act, the Act's essential features, and the Supreme Court's ruling in Eastern insofar as they are pertinent to the issue before the Court to which this brief is addressed.

#### A.    Background of the Coal Act.

Commencing in 1946, health care for retired coal miners represented by the UMWA was provided through a series of multiemployer health benefit plans ("UMWA Plans") established and maintained through successive national coal wage agreements ("NBCWAs"). Eastern, 524 U.S. at 504-11.[3] The UMWA Plans continued to provide benefits to eligible retirees even if the retirees' former employers went out of business or otherwise stopped paying into the Plans. Id. at 511. The remaining coal operators' signatory to the NBCWAs financed the benefits of these so-called "orphan" retirees.

By the late 1980s, the UMWA Plans were in serious financial trouble. Id. As health care costs rose, increasing numbers of coal operators exited the coal industry or refused to sign the NBCWA, leaving retiree health care to be funded by those signatory

---

[2] In their joint motion to set briefing schedule, the parties recognized that the statutory construction issue presented in this case can be resolved on dispositive motions. (See D.I. 12.) This Court's disposition of this case does not require the Court to resolve any issues of material fact. The Trustees present this Statement of Facts in order to place the issue of statutory construction in context.

operators still mining coal. Id. at 510-11. Fewer and fewer operators remained to carry

the burden of rapidly rising health care costs, not only for their own retirees but also for

thousands of retirees with whom the remaining contributing operators had no

employment relationship. Id. As a result, the continued viability of the UMWA

multiemployer health care system was cast into serious doubt.

Congress responded to this funding crisis by enacting the Coal Act on October 24,

1992 to establish a statutory system for funding retiree health benefits. When it enacted

the Coal Act, Congress found:

> "[I]t is necessary to modify the current private health care
> benefit plan structure for retirees in the coal industry to
> identify persons most responsible for plan liabilities in
> order to stabilize plan funding and allow for the provision
> of health care benefits to such retirees." Energy Policy Act
> of 1992, Pub. L. No. 102-486, § 19142(a)(2), 106 Stat.
> 2776, 3037, 26 U.S.C. § 9701 note (1992) (emphasis
> added).

As the Supreme Court recognized in Peabody, Congress's intention in passing the Coal

Act was to "'stabilize plan funding' and 'provide for the continuation of a privately

financed self-sufficient program'" for the delivery of health care benefits to the

beneficiaries of the predecessor UMWA Plans. 537 U.S. at 154 (quoting Energy Policy

Act of 1992, Pub. L. No. 102-486, § 19142, 106 Stat. at 3037).

---

3   Unless otherwise indicated, subsequent citations to Eastern refer to Justice O'Connor's
plurality opinion.

### B.    Structure of the Combined Fund.

To finance the Combined Fund, Congress apportioned liability among coal operators on a "pay for your own" basis.[4]  This "pay for your own" principle is codified at § 9706(a) of the Coal Act, which directs SSA to assign Combined Fund beneficiaries to signatory operators (and "related persons" of such operators) according to a statutorily prescribed three-tier system of priorities.[5]  26 U.S.C. § 9706(a)(1)-(3).  First, SSA seeks to assign a retiree to the coal operator that was a signatory to the 1978 or any later NBCWA and was the most recent signatory operator to employ the retiree in the coal industry for at least two years.  Id. § 9706(a)(1).  Second, if no such operator can be identified, SSA seeks to assign the retiree to the operator that was a signatory to the 1978 or any later NBCWA and was the most recent signatory operator to employ the retiree in the coal industry for any period of time.  Id. § 9706(a)(2).  Third, a retiree not assigned under the first two tiers is to be assigned to the signatory operator that employed the retiree for the longest period of time prior to the effective date of the 1978 NBCWA, regardless of whether the operator signed the 1978 (or a later) NBCWA.  Id. § 9706(a)(3).

Under this assignment system, coal operators that had agreed previously to contribute to the UMWA Plans pursuant to the terms of their collective bargaining

---

[4]  See 138 Cong. Rec. 20120 (1992); id. S10785 (daily ed. July 29, 1992) (statement of Sen. Ford) (Coal Act "close[s] the new orphan fund" and "allocate[s] costs according to the principle that those most responsible should bear the greatest portion of costs"); 138 Cong. Rec. 34001 (1992); id. S17603 (daily ed. Oct. 8, 1992) (technical explanation of Senator Wallop entitled "Conference Report") (Coal Act is "designed to allocate the greatest number of beneficiaries in the Plans to a prior responsible operator").

[5]  The term "related persons" is defined in § 9701(c)(2) of the Coal Act.

agreements are required to pay annual premiums to the Combined Fund for each of their
assigned beneficiaries, consisting of a health benefit premium, a death benefit premium,
and an unassigned beneficiaries premium.  Id. § 9704(a)(1)-(3).  SSA computes an annual
per beneficiary health benefit premium based on a formula set by Congress in
§ 9704(b)(2).

     Critical to the Coal Act's funding scheme was Congress's adoption of a method
of providing for "orphan" beneficiaries (i.e., Combined Fund beneficiaries whose former
employers are no longer in business).  The Act makes coal operators that receive
assignments of beneficiaries pursuant to § 9706(a)(1)-(3) ("assigned operators") liable for
their proportionate share of the health care premiums for these "unassigned
beneficiaries."  Id. § 9704(d).  To help alleviate the financial burden of health care for
such beneficiaries, Congress authorized transfers of substantial sums to the Combined
Fund from the collectively-bargained UMWA 1950 Pension Plan and from interest
earned on the Abandoned Mine Reclamation Fund (the "AML Fund") established under
the Surface Mining Control and Reclamation Act of 1977.  Id. § 9705(a), (b); 30 U.S.C.
§ 1232(h).

     If transfers from the 1950 Pension Plan and the AML Fund prove insufficient to
cover benefits for the "orphan" retirees, the Coal Act provides for the assessment of an
annual unassigned beneficiaries premium allocated among signatory operators on the
basis of their pro rata share of assigned beneficiaries.  See 26 U.S.C. § 9704(d), (f).
Thus, the more beneficiaries an operator is assigned, the greater its share of the total
unassigned beneficiaries premium not funded by the transfers from the 1950 Pension Plan
and the AML Fund.  See generally, Apogee Coal Co. v. Holland, 296 F.3d 1294, 1296-97

7

(11th Cir. 2002) (describing the computation of Coal Act premiums and the application of transfers from the 1950 Pension Plan and AML Fund to reduce certain premium obligations).

<strong>C.    Eastern Enterprises v. Apfel and SSA's Response.</strong>

In <u>Eastern Enterprises v. Apfel</u>, 524 U.S. 498 (1998), the Supreme Court addressed the constitutionality of the third tier of the Combined Fund beneficiary assignment system, 26 U.S.C. § 9706(a)(3), as applied to a coal operator that did not sign the 1974 NBCWA or any subsequent NBCWA and that was not related to a company that had signed such an agreement. 524 U.S. at 515-16. A divided Court held this aspect of the statute unconstitutional as applied to such an operator, Eastern Enterprises. <u>Id</u>. at 538 (plurality); <u>id</u>. at 550 (Kennedy, J., concurring in the judgment).

In the fall 1998, after <u>Eastern</u>, SSA relieved Eastern Enterprises and other operators that, like Eastern Enterprises, had not signed the 1974 or a later NBCWA and were not statutorily related to a company that had signed such an agreement, of their Combined Fund beneficiary assignments. <u>Shenango</u>, 307 F.3d at 184. At the same time, SSA redesignated those beneficiaries — numbering 8,119 — as "unassigned" beneficiaries. <u>Apogee Coal</u>, 296 F.3d at 1297. SSA voided assignments to Eastern-type operators not only for plan years subsequent to the Supreme Court's ruling in <u>Eastern</u>, but for <u>all</u> plan years going back to the inception of the Combined Fund on February 1, 1993. <u>See</u> <u>id</u>.

In fall 1999, SSA assigned a number of the <u>Eastern</u> beneficiaries to those operators, such as Peabody, that had employed the retired miners for a longer period than any other operator as to which it is constitutional to make assignments under § 9706 of

the Coal Act.  <u>Sidney Coal</u>, 427 F.3d at 341.  Approximately 1,500 of these beneficiaries

were assigned to other operators.  <u>Id</u>.  Peabody received assignments of <u>Eastern</u>

beneficiaries.  (D.I. 1 ¶ 15.)

**ARGUMENT**

It is well settled that SSA's decision to assign Eastern beneficiaries to coal operators such as Peabody is based on a permissible construction of the Coal Act.  Six of seven courts to rule on the precise issue now before this Court — including the Fourth, Sixth and District of Columbia Circuits — have ruled in favor of SSA and the Trustees.[6] The only court to have ruled to the contrary, among the appellate and district courts that have decided the issue, is the U.S. District Court for the Eastern District of Kentucky. Sidney Coal Co. v. Massanari, 221 F. Supp. 2d 755 (E.D. Ky. 2002).  The Sixth Circuit reversed that ruling in a unanimous decision, holding that SSA permissibly construed the Coal Act when it assigned Eastern beneficiaries to coal operators — such as Peabody — that employed the beneficiaries in question and as to which it is constitutional to make such assignments.  Sidney Coal, 427 F.3d at 346-51.  This Court should join the great weight of authority in the federal courts and reject Peabody's claims.

---

[6]  See Pittston Co. v. United States, Nos. 3:97CV294 & 01CV273, 2002 U.S. Dist. LEXIS 18654 at *39-42 (E.D. Va. Aug. 20, 2002) (upholding SSA's assignments of Eastern beneficiaries), aff'd, 368 F.3d 385 (4th Cir. 2004); Elgin Nat'l Indus. v. Barnhart, Nos. 04-5243 & 04-7094, 2005 U.S. App. LEXIS 7361 (D.C. Cir. Apr. 27, 2005) (rejecting coal operators challenge for the reasons stated in the Fourth Circuit's decision in Pittston); Sidney Coal Co. v. Massanari, 221 F. Supp. 2d 755 (E.D. Ky. 2002), rev'd in relevant part, 427 F.3d 336, 346-51 (6th Cir. 2005); Wheeling-Pittsburgh Steel Corp. v. Barnhart, 229 F. Supp. 2d 539, 554 (N.D. W. Va. 2002) (upholding SSA's assignments of Eastern beneficiaries); Nell Jean Indus. v. Barnhart, 224 F. Supp. 2d 10, 23-26 (D.D.C. 2002) (same).

I.    **SSA Properly Assigned <u>Eastern</u> Beneficiaries to Peabody.**

      A.    **In Determining How the Coal Act Should Be Applied After <u>Eastern</u>, this Court Should Focus its Attention on Evidence of Congressional Purpose.**

The Supreme Court has addressed on several occasions, in connection with determining whether a statute is severable, what courts must do when a severable portion or application of a statute has been found unconstitutional. As the Court explained in <u>Alaska Airlines, Inc. v. Brock</u>, 480 U.S. 678 (1987), wherever "'an act of Congress contains unobjectionable provisions separable from those found to be unconstitutional, it is the duty of this court to so declare, and to maintain the act in so far as it is valid.'" <u>Id</u>. at 684 (quoting <u>Regan v. Time, Inc.</u>, 468 U.S. 641, 652 (1984)).

In this instance, the entirety of the Coal Act is "unobjectionable" with the one exception that § 9706(a)(3) cannot be applied to Eastern-type operators. <u>See</u> <u>Eastern</u>, 524 U.S. at 538, 550. With the invalidation of one application of § 9706(a)(3) in <u>Eastern</u>, it became necessary to construe the remaining provisions of the Act in such a way as to "function effectively and serve their purpose even after the invalid application has been excised." <u>Carnival Cruise Lines, Inc. v. United States</u>, 200 F.3d 1361, 1367 (Fed. Cir. 2000). As the Supreme Court explained in <u>New York v. United States</u>:

> "[W]here Congress has enacted a statutory scheme for an obvious purpose, and where Congress has included a series of provisions operating * * * to achieve that purpose, the invalidation of one of the [provisions] should not ordinarily cause Congress' overall intent to be frustrated." 505 U.S. 144, 186 (1992).

Thus, severability jurisprudence teaches that there is only one question that this Court needs to answer to determine whether SSA properly assigned <u>Eastern</u> beneficiaries to Peabody. That question is whether Congress's intent is best served by assigning <u>Eastern</u>

11

beneficiaries to coal operators such as Peabody for whom they worked (as SSA concluded and the Trustees contend), or by leaving those beneficiaries permanently unassigned and having their health care costs covered by transfers from the AML Fund and, if the transfer amounts should be insufficient, by coal operators who did not employ them.

This is not a question that can be answered by relying on the plain language of the Coal Act. After Eastern, the Coal Act cannot simply be applied to assign beneficiaries to the signatory operator "which employed the coal industry retiree in the coal industry for a longer period of time than any other signatory operator prior to the effective date of the 1978 coal wage agreement," 26 U.S.C. § 9706(a)(3), when that operator is an Eastern-type operator. It is unconstitutional to make such an assignment. See Eastern, 524 U.S. at 538, 550. Nor can a retiree be deemed to be an "unassigned" beneficiary under the "plain language" of the Coal Act when he worked for an Eastern-type operator "for a longer period of time than any other signatory operator prior to the effective date of the 1978 coal wage agreement."

Because the plain language of the Coal Act cannot resolve this issue, this Court can take one of two alternative approaches. The first approach is for this Court to construe the Coal Act in the light of Eastern in the manner that will best effectuate the manifest purposes of Congress in enacting the Coal Act. The second approach is for this Court to conclude that such a task is more appropriately left to SSA, the agency charged with making assignments under the Coal Act. SSA's assignment decision should be upheld under either approach, because assigning Eastern beneficiaries to Peabody, rather

than designating those beneficiaries permanently as "unassigned," is more consistent with the Coal Act's purposes.

### B.    SSA's Assignment of <u>Eastern</u> Beneficiaries to Peabody Best Effectuates Congress's Purpose.

After <u>Eastern</u>, SSA construed § 9706(a)(3) to require the assignment of <u>Eastern</u> beneficiaries to those signatory operators as to whom the statutory provision is constitutional and that, from among those operators, "employed the coal industry retiree in the coal industry for a longer period of time than any other signatory operator prior to the effective date of the 1978 coal wage agreement." 26 U.S.C. § 9706(a)(3).  As we now show, that decision furthers the express purposes for which Congress enacted the Coal Act.  First, SSA's decision gives effect to Congress's overlapping aims of imposing premium obligations on operators that benefited from the miners' labor and limiting the size of the "orphan" or "unassigned" population.  Second, SSA's decision furthers Congress's desire to have beneficiaries' health care costs covered, where possible, through a privately-financed system.

In rejecting another attempt by Peabody to avoid paying premiums to cover the health care costs of certain of its former employees, the Supreme Court relied on Congress's stated purpose in enacting the Coal Act and the Act's legislative history to conclude that it was Congress's "expressed understanding that the companies that got the benefit of a worker's labor should pay for the worker's [health] benefits." <u>Peabody</u>, 537 U.S. at 159 n.6.  As the Supreme Court explained, "[i]t seems not to have crossed Congress's mind that the category of the 'unassigned' would include beneficiaries, let alone a lot of beneficiaries, who could be connected with an operator * * *." <u>Id</u>. at 165-66.

13

As we noted above, Congress's principal aim in passing the Coal Act was "to identify persons most responsible for plan liabilities in order to stabilize plan funding and allow for the provision of health care benefits to such retirees." Energy Policy Act of 1992 § 19142(a)(2), 106 Stat. at 3037; see also 3/14/06 SSA Br. at 12-13 (D.I. 10). The Supreme Court recognized the centrality of the Coal Act's "pay for your own" principle, when it quoted this precise language from the Act in support of its decision upholding SSA's authority to assign beneficiaries to the coal operators for whom they worked. Peabody, 537 U.S. at 171.

The Peabody Court also relied on the Act's legislative history to bolster its understanding that "the Act requires the Commissioner to assign, where possible, every coal industry retiree to a 'signatory operator'." 537 U.S. at 153. Specifically, the Court stated that:

- "'[The Coal Act's] purpose is to assure that any beneficiary, once assigned, remains the responsibility of a particular operator, and that the number of unassigned beneficiaries is kept to an absolute minimum.'" Peabody, 537 U.S. at 165, quoting 138 Cong. Rec. 34003 (1992); id. S17605 (daily ed. Oct. 8, 1992) (statement from Senator Wallop's proposed Conference Report).

- "Senator Wallop gave a detailed explanation of the Coal Act's provisions for unassigned beneficiaries, which assumed that the 'unassigned' would be true orphans: 'As a practical matter, not all beneficiaries can be assigned to a specific last signatory operator, related person or assigned operator for payment purposes. This is because in some instances, none of those persons remain in business, even as defined to include non-mining related businesses. Thus, provisions are made for unassigned beneficiary premiums.'" Peabody, 537 U.S. at 165, quoting 138 Cong Rec. 34003 (1992); id. S17605 (daily ed. Oct. 8, 1992).

- "The record of the hearing [before the House Committee of Ways and Means on September 9, 1993] also contains a statement by the committee chairman that the Act required operators to 'pay for their own retirees, and to assume a proportionate share of liability

for true "orphans" — retirees whose companies are no longer in
existence and cannot pay for the benefits.'" Peabody, 537 U.S. at
165 n.10, quoting Hearing on Provisions Relating to the Health
Benefits of Retired Coal Miners Before the House Ways and
Means Comm., 103d Cong., 1st Sess. 85 (1993).

Congress did not intend for the health care costs of retired miners and their

dependants to be borne by companies that never employed the miners (in the form of an

unassigned beneficiaries premium), when companies for whom the miners worked —

such as Peabody — were eligible to receive assignments. See Holland v. Pardee Coal

Co., 269 F.3d 424, 436 (4th Cir. 2001) (stating that "the legislative history of the Coal

Act reflects an effort to 'insure that every reasonable effort is made to locate a

responsible party to provide the benefits before the costs are passed to other signatory

companies which have never had any connection to the individual'") (quoting 138 Cong.

Rec. 34002 (1992), id. S17604 (daily ed. Oct. 8, 1992)), cert. denied, 537 U.S. 1159

(2003).  Peabody's request that this Court void the assignments of Eastern beneficiaries

and shift the cost of paying for those beneficiaries' health care from Peabody, which

employed the beneficiaries, to the AML Fund and coal operators that never employed the

retirees, contradicts the teaching of the Supreme Court's most recent Coal Act decision

— a case to which Peabody was a party. Peabody, 537 U.S. at 163-68.

> ### C.    SSA's Assignment of Eastern Beneficiaries to Peabody
> ### Was Appropriate Given the Retroactive Nature of
> ### Constitutional Decisions of the Supreme Court.

Peabody's claims are based on a fundamental misunderstanding of the retroactive

nature of judicial decisions.  Peabody concedes in its complaint that the Supreme Court's

decision in Eastern rendered assignments that had been made to Eastern-type operators

"void ab initio," (D.I. 1 ¶ 14), yet Peabody claims that SSA violated § 9706 of the Coal

Act in the fall 1999 when it made initial, correct assignments of Eastern beneficiaries to companies such as Peabody (see D.I. 1 ¶ 18).

In holding in Eastern that it was unconstitutional to assign Combined Fund beneficiaries to Eastern Enterprises, the Supreme Court was not stating merely that from that point forward it would be unconstitutional to assign beneficiaries to Eastern Enterprises, but that it had never been constitutional to do so. Eastern-type operators were not suddenly removed from the Coal Act equation after the Supreme Court decided Eastern; they had never constitutionally been part of that equation and, therefore, were never eligible to receive assignments. The Fourth Circuit in Pittston made this clear in rejecting another coal operator's challenge to SSA's assignments of Eastern beneficiaries:

> "When Eastern Enterprises held that it was unconstitutional to assign retirees to Eastern under the Coal Act, the ruling effectively held that the Commissioner should never have assigned retirees to Eastern [under the Coal Act] in the first place. Because the Commissioner's assignments were invalid from the beginning, she had to start over to assign the beneficiaries to comport with the terms of the statute as well as the Constitution." Pittston, 368 F.3d at 403.

The Sixth Circuit made the same point in its Sidney Coal decision. See 427 F.3d at 347 ("After determining that its Eastern-type assignments were 'invalid from the beginning,' the SSA began anew, assigning beneficiaries 'to comport with the terms of the statute as well as the Constitution.'") (quoting Pittston, 368 F.3d at 403).

The rulings in Pittston and Sidney Coal are in keeping with Supreme Court jurisprudence, which recognizes "'a general rule of retrospective effect for the constitutional decisions of this Court.'" Harper v. Va. Dep't of Taxation, 509 U.S. 86, 94 (1993) (quoting Robinson v. Neil, 409 U.S. 505, 507 (1973)). The Supreme Court reaffirmed this principle in Rivers v. Roadway Express, Inc., 511 U.S. 298 (1994). The

Sixth Circuit applied the teaching of <u>Rivers</u> to the <u>Eastern</u> reassignment issue, when it

noted that "'[a] judicial construction of a statute is an authoritative statement of what the

statute meant before as well as after the decision of the case giving rise to that

construction.'" 427 F.3d at 347 (quoting <u>Rivers</u>, 511 U.S. at 311-12).

The Supreme Court ruled in <u>Eastern</u> that it had <u>never</u> been constitutional to

include <u>Eastern</u>-type operators in the Coal Act's assignment scheme. <u>See</u> <u>Pittston</u>, 368

F.3d at 403; <u>Sidney Coal</u>, 427 F.3d at 347; <u>Nell Jean</u>, 224 F. Supp. 2d at 26. Rather, as

the <u>Pittston</u> court recognized, "[i]n applying § 9706 to the retirees left unassigned as the

result of the decision in <u>Eastern Enterprises</u>, the Commissioner * * * merely removed

from the pool of possible contributors those coal operators that could not constitutionally

be required to contribute." <u>Pittston</u>, 368 F.3d at 404. In reassigning <u>Eastern</u> beneficiaries

to companies such as Peabody that had employed the beneficiaries and as to which the

Coal Act is constitutional, "the Commissioner did not change the wording of the statute,

but merely followed the Supreme Court's ruling that the Coal Act may only apply to a

narrower group of persons than previously thought." <u>Id</u>. That group includes Peabody,

and SSA's assignment of <u>Eastern</u> beneficiaries to Peabody was proper under the Coal

Act.[7]

---

[7] Peabody's claim that SSA should have continued to take into account <u>Eastern</u>
beneficiaries' employment with <u>Eastern</u>-type operators, even after the Supreme Court
issued its ruling in <u>Eastern</u>, (<u>see</u> D.I. 1 ¶¶ 16-17), is without merit. The Supreme Court
made clear in <u>Peabody</u> that Congress "opt[ed] for finality [in the assignment process]
only once an <u>accurate</u> initial assignment has been made." 537 U.S. at 169 n.12
(emphasis added). Accurate assignments of <u>Eastern</u> beneficiaries were not made until
SSA disregarded those beneficiaries' employment with <u>Eastern</u>-type operators (as to
which the Coal Act could not be applied constitutionally) and assigned those
beneficiaries to other coal operators, such as Peabody, in the fall 1999. Only one of the
seven courts that have ruled on the issue now before this Court has concluded that SSA
should have continued to take employment with <u>Eastern</u>-type operators into account post-

**II.    SSA's Decision to Assign <u>Eastern</u> Beneficiaries to
        Peabody Deserves Deference.**

As demonstrated above, SSA's assignment of <u>Eastern</u> beneficiaries to Peabody

was required by the correct construction of § 9706(a)(3) in the light of <u>Eastern</u> and

Congress's intent in passing the Coal Act.  If this Court were to conclude, however, that

the statute itself leaves any doubt about SSA's authority to assign <u>Eastern</u> beneficiaries,

then SSA's interpretation should be afforded deference under the well-established

principles set forth by the Supreme Court in <u>Chevron U.S.A. , Inc. v. Natural Res. Def.</u>

<u>Council, Inc.</u>, 467 U.S. 837 (1984).  Applying <u>Chevron</u>, the Court of Appeals has

recognized that when a "'statute is silent or ambiguous with respect to the specific issue,

the question for the court is whether the agency's answer is based on a permissible

construction of the statute.'"  <u>Corragioso v. Ashcroft</u>, 355 F.3d 730, 733 (3d Cir. 2004)

(quoting <u>Chevron</u>, 467 U.S. at 842-43).

Although the Court of Appeals has not specifically addressed the issue of whether

SSA's decisions respecting the assignments of beneficiaries under the Coal Act are

entitled to deference, other federal appellate courts have concluded that SSA is entitled to

deference with respect to decisions the agency makes in carrying out its responsibility for

assigning beneficiaries under the Coal Act.  In circumstances identical to the instant

action, the Fourth Circuit held that SSA's assignments of <u>Eastern</u> beneficiaries were

"based on a permissible construction of the statute," <u>Pittston</u>, 368 F.3d at 402, and thus

---

<u>Eastern</u>.  That district court was reversed by the Sixth Circuit.  <u>See</u> <u>Sidney Coal</u>, 221 F.
Supp. 2d 755, 781 (E.D. Ky. 2002), <u>rev'd in relevant part</u>, 427 F.3d 336, 346-51 (6th Cir.
2005).

"entitled to Chevron deference." Id. at 404 n.3.[8]  Similarly, in Ass'n of Bituminous
Contractors, Inc. v. Apfel, 156 F.3d 1246 (D.C. Cir. 1998), the D.C. Circuit deferred
under Chevron to SSA's interpretation of a Coal Act provision, because "[i]mplicit in that
direction [to make assignments] is a delegation to * * * interpret the statute — including
definitions of general applicability — to perform that task."[9]  Id. at 1251.

Given these decisions in the Fourth and D.C. Circuits, there should be no question
that SSA's decision to assign Eastern beneficiaries to coal operators, such as Peabody, for
whom the beneficiaries worked, rather than place the beneficiaries permanently in the
"unassigned pool," is reasonable and entitled to deference.  Given the text, structure,
purpose and legislative history of the Coal Act, any contrary interpretation would have
been unreasonable.

---

[8]  Similarly, in Holland v. Pardee, the Fourth Circuit indicated that the Commissioner's
interpretation of § 9706(a) of the Coal Act would have merited Chevron deference had
the court not been able to ascertain a clear congressional intent.  See 269 F.3d at 431 n.8.

[9]  In 2002, the D.C. Circuit reaffirmed that SSA's "reasoned interpretations" of Coal Act
provisions are entitled to Chevron deference.  See Holland v. Nat'l Mining Ass'n, 309
F.3d 808, 817 (D.C. Cir. 2002).

## CONCLUSION

For the foregoing reasons and the reasons set forth in SSA's brief in support of its motion to dismiss, the Trustees respectfully request that the Court grant judgment in favor of SSA and the Trustees.

ASHBY & GEDDES

*/s/ Carolyn S. Hake (#3839)*

_____

Philip Trainer, Jr. (#2788)
Carolyn S. Hake (#3839)
222 Delaware Avenue
P.O. Box 1150
Wilmington, DE  19899
(302) 654-1888
ptrainer@ashby-geddes.com
chake@ashby-geddes.com

- and -

David W. Allen
Larry D. Newsome
Christopher F. Clarke
Senior Assistant General Counsel
UMWA Health & Retirement Funds
Office of the General Counsel
2121 K Street, N.W.
Washington, D.C.  20037
(202) 521-2238

*Attorneys for Defendant-Intervenors*
*Michael H. Holland et al., Trustees of the*
*UMWA Combined Benefit Fund*

Dated:  March 31, 2006
168169.1

20

## CERTIFICATE OF SERVICE

I hereby certify that on the 31st day of March, 2006, the attached **OPENING BRIEF IN**

**SUPPORT OF DEFENDANT-INTERVENOR TRUSTEES' MOTION FOR SUMMARY**

**JUDGMENT** was served upon the below-named counsel at the address and in the manner

indicated:

Patricia C. Hannigan, Esquire                          VIA HAND DELIVERY
U.S. Attorney's Office
1007 Orange Street, Suite 700
Wilmington, DE 19899

Eric R. Womack, Esquire                                 VIA FEDERAL EXPRESS
Trial Attorney, Federal Programs Branch
Civil Division, U.S. Department of Justice
20 Massachusetts Ave., N.W.
Washington, D.C. 20001

Thomas R. Hunt, Jr., Esquire                          VIA HAND DELIVERY
Jason A. Cincilla, Esquire
Morris, Nichols, Arsht & Tunnell
1201 North Market Street
Wilmington, DE 19899

John R. Woodrum, Esquire                               VIA FEDERAL EXPRESS
Ogletree, Deakins, Nash, Smoak & Stewart, P.C.
Fifth Floor
2400 N Street, N.W.
Washington, D.C. 20037


                                        */s/ Carolyn S. Hake*
                                        _____
                                        Carolyn S. Hake

168176.1