IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

PEABODY COAL COMPANY, LLC et al.,

               Plaintiffs,

     v.

JO ANNE B. BARNHART, Commissioner of
Social Security,

              Defendant,

    and

MICHAEL H. HOLLAND et al., Trustees of
the UMWA Combined Benefit Fund,

              Defendant-Intervenors.

No. 05-671-SLR

---

**DEFENDANT-INTERVENOR TRUSTEES' COMBINED REPLY TO
PLAINTIFFS' OPPOSITION TO TRUSTEES' MOTION FOR
SUMMARY JUDGMENT AND OPPOSITION TO PLAINTIFFS'
MOTION FOR SUMMARY JUDGMENT**

Philip Trainer, Jr. (# 2788)
Carolyn S. Hake (# 3839)
Ashby & Geddes
222 Delaware Avenue
P.O. Box 1150
Wilmington, DE 19899
(302) 654-1888

David W. Allen
Larry D. Newsome
Christopher F. Clarke
Senior Assistant General Counsel
UMWA Health & Retirement Funds
Office of the General Counsel
2121 K Street, N.W.
Washington, D.C. 20037
(202) 521-2238

Attorneys for Defendant-Intervenors Michael H. Holland et al.,
Trustees of the UMWA Combined Benefit Fund

Dated: May 8, 2006
169276.1

## TABLE OF CONTENTS

**PAGE**

TABLE OF CITATIONS ................................................................ ii

INTRODUCTION ................................................................... 1

COUNTER STATEMENT OF FACTS .......................................... 4

ARGUMENT ......................................................................... 4

    I.    Peabody's "Plain Language" Analysis Is Flawed ....................... 4

    II.   Peabody's Claim that SSA Made Impermissible "Next-in-Line"
        Assignments Contradicts Retroactivity Principles and the
        Supreme Court's Decision in Barnhart v. Peabody ..................... 9

    III.  Peabody Ignores the Clear Evidence of Legislative Intent
        Supporting SSA's Decision .................................................. 13

    IV.  This Court Should Reject Peabody's Claim that SSA's
        Decision Is Not Entitled to Deference ..................................... 16

CONCLUSION ..................................................................... 19

# TABLE OF CITATIONS

**CASES:**                                                                    **PAGE(S)**

Alaska Airlines, Inc. v. Brock, 480 U.S. 678 (1987)...........................................8

Ass'n of Bituminous Contractors, Inc. v. Apfel, 156 F.3d 1246 (D.C. Cir. 1998)............16

Barnhart v. Peabody Coal Co., 537 U.S. 149 (2003)...............................*passim*

Barnhart v. Sigmon Coal Co., 534 U.S. 438 (2002) ...............................7. 11, 12

Barnhart v. Walton, 535 U.S. 212 (2002) ....................................................17, 18

Carnival Cruise Lines, Inc. v. United States, 200 F.3d 1361 (Fed. Cir. 2000)...................8

Eastern Enterprises v. Apfel, 524 U.S. 498 (1998)...................................*passim*

Elgin Nat'l Indus. v. Barnhart, Nos. 04-5243 & 04-7094, 2005 U.S. App.
  LEXIS 7361 (D.C. Cir. Apr. 27, 2005)..............................................1, 17

Holland v. Nat'l Mining Ass'n, 309 F.3d 808 (D.C. Cir. 2002)........................16

Holland v. Pardee Coal Co., 269 F.3d 424 (4th Cir. 2001), cert. denied,
  537 U.S. 1159 (2003) ..................................................................16

Marchetti v. United States, 390 U.S. 39 (1968) ................................................12

Mary Helen Coal Corp. v. Hudson, 235 F.3d 207 (4th Cir. 2000) ......................9

New York v. United States, 505 U.S. 144 (1992)..............................................8

Pittston Co. v. United States, 368 F.3d 385 (4th Cir. 2004), cert. denied,
  544 U.S. 904 (2005)...................................................*passim*

Rivers v. Roadway Express, Inc., 511 U.S. 298 (1994) ....................................2

Shenango, Inc. v. Apfel, 307 F.3d 174 (3d Cir. 2002)..............................3, 14, 15

Sidney Coal Co. v. Social Sec. Admin., 427 F.3d 336 (6th Cir. 2005),
  cert. denied, 126 S. Ct. 1608 (2006) ..................................*passim*

Skidmore v. Swift & Co., 323 U.S. 134 (1944)..............................................18

**STATUTES:**

Coal Industry Retiree Health Benefit Act of 1992
  26 U.S.C. §§ 9701-9722 ............................................................................... *passim*

  § 9701(c)(2) .........................................................................................7
  § 9704(d)............................................................................................5
  § 9706...............................................................................................5
  § 9706(a) ...................................................................................5, 6, 8, 15
  § 9706(a)(3) ...............................................................................5, 8
  § 9706(b)(1)(B).............................................................................5, 6, 7

# INTRODUCTION

Pursuant to this Court's Scheduling Order, dated March 21, 2006, defendant-intervenor Trustees submit this brief in response to the brief filed by plaintiffs Peabody Coal Company, LLC and Eastern Associated Coal Corporation (collectively, "Peabody") on April 21, 2006, in which Peabody opposed defendant Commissioner of Social Security's ("SSA's") motion to dismiss and the Trustees' motion for summary judgment and set forth its own argument in support of summary judgment.  The instant response is limited to the one legal issue presented in this lawsuit — whether SSA acted within the authority conferred by the Coal Act in assigning to Peabody beneficiaries whose assignments to other coal operators had been voided as a result of Eastern Enterprises v. Apfel, 524 U.S. 498 (1998).  The three courts of appeals that have addressed this issue have rejected the arguments Peabody presses here and have upheld the legality of SSA's assignments.[1]

The focus of Peabody's argument is that SSA "violate[d] the plain language of the Coal Act" by assigning Eastern beneficiaries to Peabody.  See D.I. 17 at 10-28.  Peabody contends that SSA should have designated the 8,000 Eastern beneficiaries as permanently "unassigned."  Peabody's attempt to avoid premium liability for beneficiaries it employed is flawed for three main reasons.

First, this dispute cannot be resolved, as Peabody contends, by the plain language of the Coal Act's assignment criteria.  Congress's only clearly expressed intent was to assign the beneficiaries in question to Eastern-type operators.  When the Supreme Court

---

[1]  See Sidney Coal Co. v. Social Sec. Admin., 427 F.3d 336, 346-51 (6th Cir. 2005), cert. denied, 126 S. Ct. 1608 (2006); Elgin Nat'l Indus. v. Barnhart, Nos. 04-5243 & 04-7094,

held in Eastern Enterprises that it is not constitutionally permissible to assign

beneficiaries to Eastern-type operators, SSA was confronted with a "case unprovided

for." Barnhart v. Peabody Coal Co., 537 U.S. 149, 169 (2003). In order to ascertain

congressional intent, SSA had to look beyond the Coal Act's plain words to determine

how Congress would have intended to fund health care costs for Eastern beneficiaries had

it known that it was not permissible to assign those beneficiaries to Eastern-type

operators.

　　　　Second, Peabody's claim that SSA has made impermissible "next-in-line"

assignments contradicts the Supreme Court's decision in Peabody and the Court's

retroactivity jurisprudence that the "judicial construction of a statute is an authoritative

statement of what the statute meant before as well as after the [Court's] decision." See

Rivers v. Roadway Express, Inc., 511 U.S. 298, 312-13 (1994). As the Supreme Court

recognized in Peabody, the Coal Act "opts for finality only once an accurate initial

assignment has been made." 537 U.S. at 169 n.12 (emphasis added). Here, it was not

until fall 1999, when SSA assigned Eastern beneficiaries to Peabody, that SSA made an

"accurate initial assignment." See also Pittston Co. v. United States, 368 F.3d 385, 403

(4th Cir. 2004) (recognizing that "[w]hen Eastern Enterprises held that it was

unconstitutional to assign retirees to Eastern under the Coal Act, the ruling effectively

held that the Commissioner should never have assigned retirees to Eastern in the first

place"); accord Sidney Coal Co. v. Social Sec. Admin., 427 F.3d 336, 347 (6th Cir.

2005).

---

2005 U.S. App. LEXIS 7361 (D.C. Cir. Apr. 27, 2005); Pittston Co. v. United States, 368
F.3d 385, 401-05 (4th Cir. 2004), cert. denied, 544 U.S. 904 (2005).

Third, the legislative history cited by Peabody does not support Peabody's claim that Congress would have preferred placing Eastern beneficiaries permanently in the unassigned pool, rather than have SSA assign those beneficiaries to operators, like Peabody, for whom the beneficiaries had worked. As the Supreme Court recognized in Peabody, two things are clear from the Coal Act's legislative history: (1) "the Act requires the Commissioner to assign, where possible, every coal industry retiree to a 'signatory operator'" 537 U.S. at 153; and (2) "'the number of unassigned beneficiaries is [to be] kept to an absolute minimum.'" Id. at 165 (quoting 138 Cong. Rec. 34003 (1992)); see also Shenango, Inc. v. Apfel, 307 F.3d 174, 195 (3d Cir. 2002) (explaining that the Coal Act's "key objective" is to "ensure that the costs of providing retirement benefits will, so far as possible, be borne by the private parties most responsible for creating retired miners' expectations of lifetime health benefits").

In short, it was eminently reasonable for SSA to conclude, after it learned from the Supreme Court that its initial assignments of Eastern beneficiaries violated the Constitution and, thus, had never been proper, to keep to a minimum the size of the unassigned pool by assigning Eastern beneficiaries to operators, like Peabody, that "got the benefit of [the] worker[s'] labor." Peabody, 537 U.S. at 159 n.6. This Court should join the three federal appellate courts that have considered this precise issue and uphold SSA's decision as a lawful construction of the Coal Act.

## COUNTER STATEMENT OF FACTS

Like SSA and the Trustees, Peabody recognizes that this lawsuit raises a pure legal issue that can be resolved on the parties' dispositive motions.[2]

## ARGUMENT

### I.    Peabody's "Plain Language" Analysis Is Flawed.

As we explained in the Trustees' opening brief and noted above, the question before this Court is whether SSA "acted within the authority conferred by the Coal Act in assigning to Peabody beneficiaries whose assignments to other coal operators had been voided as a result of the Supreme Court's decision in Eastern Enterprises v. Apfel, 524 U.S. 498 (1998)." D.I. 14 at 1. This is not a question that can be resolved, as Peabody contends, on the "plain language" of the Coal Act. See D.I. 17 at 10-15.

The Coal Act, on its face, does not answer the question before this Court, given that Congress wrote the Act with the expectation that the statute was constitutional in all respects and that beneficiaries properly could be assigned to Eastern-type operators. After Eastern Enterprises, the plain terms of the Coal Act could not be applied to assign beneficiaries "to the signatory operator which employed the coal industry retiree in the

---

[2]  Although it is not material to this Court's resolution of the legal issue presented in the parties' dispositive motions, the Trustees do not agree with Peabody's statement of the precise number of beneficiaries and premium dollars at issue in the case. See D.I. 17 at 10 (citing D.I. 16 ¶ 8 (Affidavit of Joyce Wolfgang filed with Peabody's opening brief)). Ms. Wolfgang assumed, without support, that all beneficiaries whom SSA assigned to Peabody in fall 1999 were persons who had been assigned previously to Eastern-type operators and whose assignments to such operators had been voided in fall 1998 as a result of the Supreme Court's Eastern Enterprises decision. D.I. 16 ¶¶ 7-8. The Trustees believe that the number of beneficiary assignments (and premium dollars) at issue is less than assumed. To conserve the parties' and the Court's resources, however, the Trustees propose that this issue be resolved by agreement of the parties or further proceedings, if necessary, in light of this Court's decision on SSA's motion to dismiss and the Trustees' and Peabody's motions for summary judgment.

coal industry for a longer period of time than any other signatory operator prior to the effective date of the 1978 coal wage agreement," 26 U.S.C. § 9706(a)(3), when that operator was an Eastern-type company.  Nor could such a retiree be deemed to be an "unassigned" beneficiary under the "plain language" of the Coal Act when he worked for an Eastern-type operator "for a longer period of time than any other signatory operator prior to the effective date of the 1978 coal wage agreement" — that is, when the plain language of § 9706(a)(3) assigns him to an Eastern-type operator.  Id.

Peabody ignores this latter point, as it presses its claim that the Coal Act "clearly provides" for the assignment of Eastern beneficiaries to the unassigned pool.  See D.I. 17 at 3.  Peabody asserts, for example, that "the Coal Act already provides for the financing of health care costs for retired miners who cannot be assigned to their most responsible operator under section 9706."  Id. at 19; see also id. at 20 (alleging, without any citation to the Coal Act, that the statute "resolves the financing question on its face").  This argument is apparently an implicit reference to 26 U.S.C. § 9704(d), which, in explaining how the unassigned beneficiaries premium is to be calculated, refers to "the number of eligible beneficiaries who are not assigned under section 9706 to any person for such plan year."  Section 9704(d) does not resolve this dispute, however, because the words of § 9706(a), literally applied, require that Eastern beneficiaries be assigned to Eastern-type operators.  Thus, the Act's "plain language" does not provide for shifting Eastern beneficiaries to the unassigned pool.

Peabody also seeks support for its plain language argument from § 9706(b)(1)(B), entitled "Certain employment disregarded."  D.I. 17 at 14.  Peabody notes that Congress identified two types of employment that SSA is not to take into account when making

assignments under § 9706(a) — employment with a person who is no longer in business and employment with a person during a period when the person was not a signatory to a coal wage agreement.  D.I. 17 at 14 (citing 26 U.S.C. § 9706(b)(1)(B)).  According to Peabody, because § 9706(b)(1)(B) does not direct SSA to ignore employment by Eastern-type operators, such operators are still relevant to the assignment process even though they cannot receive assignments themselves.

Peabody is essentially making an <u>expressio</u> <u>exclusio</u> argument, claiming that, after <u>Eastern Enterprises</u>, SSA still had to take employment with Eastern-type operators into account because § 9706(b)(1)(B) identifies the only two types of employment that are to be disregarded in the assignment process.  In so arguing, Peabody ignores the Supreme Court's most recent Coal Act decision — a case to which plaintiffs Peabody and Eastern Associated were parties.  The Supreme Court's decision in <u>Barnhart v. Peabody Coal Co.</u> emphasized the limited scope of the <u>expressio</u> <u>exclusio</u> canon:

> "We do not read the enumeration of one case to exclude another unless it is fair to suppose that Congress considered the unnamed possibility and meant to say no to it.  <u>United Dominion Indus., Inc.</u> <u>v. United States</u>, 532 U.S. 822, 836 (2001).  As we have held repeatedly, the canon <u>expressio</u> <u>unius</u> <u>est</u> <u>exclusio</u> <u>alterius</u> does not apply to every statutory listing or grouping; it has force only when the items expressed are members of an 'associated group or series,' justifying the inference that items not mentioned were excluded by deliberate choice, not inadvertence."  537 U.S. at 168 (quoting <u>United States v. Vonn</u>, 535 U.S. 55, 65 (2002)).

Peabody cannot plausibly contend that Congress, in passing a statute it believed was constitutional, deliberately chose to leave out of § 9706(b)(1)(B) a third type of employment that is to be disregarded, namely employment with a person as to whom it is

unconstitutional to make assignments.  See Sidney Coal, 427 F.3d at 348-49 (rejecting another coal operators' identical reliance on § 9706(b)(1)(B)).[3]

Peabody's "plain language" argument mirrors the plain language argument the company made in Barnhart v. Peabody, where the Supreme Court addressed the consequences of SSA's failure to assign beneficiaries by the date of October 1, 1993 specified in § 9706(a) of the Coal Act.  537 U.S. at 163-68.  In ruling against Peabody, the Supreme Court concluded that the fact that beneficiaries not assigned by October 1, 1993 could be placed in the unassigned pool by default did not indicate that Congress intended that beneficiaries not timely assigned be placed in the unassigned pool.  Id. at 166 ("Providing a consequence of default [in making assignments] was apparently just happenstance.").  After reviewing the structure and legislative history of the Act, the Supreme Court declined to apply a "plain language" approach and upheld assignments made after the date specified in the Act.  A similar approach requires this Court to reject Peabody's latest attempt to jettison Coal Act liability and, instead, uphold SSA's assignments of Eastern beneficiaries to Peabody.[4]

---

[3] As Peabody noted in its briefing to the Supreme Court, "Congress no doubt did not address th[e] situation [of assignments being invalidated by judicial review] because it did not expect that some assignments under the Act would be declared unconstitutional or that the Commissioner would make assignments that violated the statute."  Br. for Resp'ts Peabody Coal Co. & Eastern Associated Coal Corp., Barnhart v. Peabody, Nos. 01-705 & 01-715, 2002 WL 1290915, at *36 n.20 (U.S. June 7, 2002).

[4] In support of its "plain words" argument, Peabody contends that "the appropriate legal lens through which to assess the legality of the Commissioner's alternate assignee policy" is Barnhart v. Sigmon Coal Co., 534 U.S. 438 (2002).  D.I. 17 at 32.  Sigmon bears no resemblance to the instant action.  Here, unlike in Sigmon, the language of the relevant Coal Act provision, § 9706(a)(3), produced an unconstitutional result — i.e., the assignment of beneficiaries to Eastern Enterprises.  The Sigmon Court refused to consider evidence of congressional purpose that, in its view, contradicted the plain language of § 9701(c)(2), see 534 U.S. at 457 — a provision as to which there was no constitutional infirmity.  In the instant case, there is a constitutional infirmity that renders

Regardless of which option this Court determines to be the more appropriate means to fund the health care costs of the Eastern beneficiaries at issue here — placing them permanently in the unassigned pool (as Peabody here urges) or assigning them to operators who employed these miners (as the Fourth, Sixth and D.C. Circuits have concluded and as SSA and the Trustees argue here) — it will be construing the statute to produce a result Congress did not intend and could not realistically have contemplated. Thus, the task facing this Court, and which faced SSA in the wake of Eastern Enterprises, is to recognize that § 9706(a) cannot be applied as intended and to apply the Act's assignment provisions in such a way as to best fulfill Congress's intent.  D.I. 14 at 11-12 (citing New York v. United States, 505 U.S. 144, 186 (1992); Alaska Airlines, Inc. v. Brock, 480 U.S. 678, 684 (1987); and Carnival Cruise Lines, Inc. v. United States, 200 F.3d 1361, 1367 (Fed. Cir. 2000)).  As the Trustees demonstrated in their opening brief (D.I. 14 at 13-15) and as we emphasize in Part III below, assigning the beneficiaries at issue here to Peabody, rather than placing them in the unassigned pool, best effectuates Congress's overarching intent in passing the Coal Act.

---

the plain language unclear and necessitates this Court looking beyond the plain words of § 9706(a)(3) to determine congressional intent.  In upholding SSA's assignment decisions in Peabody, Pittston and Sidney Coal, the Supreme Court, Fourth Circuit and Sixth Circuit, respectively, looked beyond the Coal Act's plain terms, because they recognized that "what we face here is nothing more than a case unprovided for."  Peabody, 537 U.S. at 169; Pittston, 368 F.3d at 403-04; Sidney Coal, 427 F.3d at 351.  Because this case involves an issue that Congress could not reasonably have anticipated, Peabody, not Sigmon, governs.  See Sidney Coal, 427 F.3d at 348 (concluding that coal operators' "reliance on Sigmon Coal is misplaced" and relying instead on Peabody in upholding SSA's assignments of Eastern beneficiaries  to operators as to which the Coal Act is constitutional).

II.    **Peabody's Claim that SSA Made Impermissible Next-in-Line Assignments Contradicts Retroactivity Principles and the Supreme Court's Decision in <u>Barnhart v. Peabody</u>.**

In their opening brief, the Trustees demonstrated that SSA's assignment of <u>Eastern</u> beneficiaries to Peabody was appropriate given the retroactive nature of constitutional decisions of the Supreme Court. <u>See</u> D.I. 14 at 15-17. In response, Peabody makes the same mistake that other coal operators have made by ignoring the retroactive nature of <u>Eastern Enterprises</u> and by referring to SSA's assignments of <u>Eastern</u> beneficiaries as impermissible "next-in-line" assignments. D.I. 17 at 3, 16 n.7, 28. Peabody's "next-in-line" characterization ignores the fact that the initial assignments to Eastern-type operators were never constitutional and, thus, were void <u>ab</u> <u>initio</u>.

Peabody's characterizations are based on too narrow a reading of the Supreme Court's retroactivity jurisprudence. Peabody contends that "[t]he Commissioner fully effectuated retroactivity jurisprudence by voiding beneficiary assignments to Eastern Companies and returning their money." <u>Id</u>. at 28.[5] But what retroactivity jurisprudence teaches is not so limited. As the Trustees explained in their opening brief, "'a judicial construction of a statute is an authoritative statement of what the statute meant before as well as after the decision of the case giving rise to that construction.'" D.I. 14 at 17 (quoting <u>Sidney Coal</u>, 427 F.3d at 347). Accordingly, "[w]hen <u>Eastern Enterprises</u> held that it was unconstitutional to assign retirees to Eastern under the Coal Act, the ruling effectively held that the Commissioner <u>should never have assigned</u> retirees to Eastern <u>in</u>

---

[5] Peabody's reliance (D.I. 17 at 28) on <u>Mary Helen Coal Corp. v. Hudson</u>, 235 F.3d 207, 211 (4th Cir. 2000), in support of this proposition is misplaced. <u>Mary Helen</u> involved a claim by an Eastern-type operator concerning the effect of <u>Eastern Enterprises</u> on beneficiary premiums paid to the Combined Fund by Eastern-type operators. The <u>Mary</u>

the first place." <u>Pittston</u>, 368 F.3d at 403; <u>see also</u> <u>Sidney Coal</u>, 427 F.3d at 347. Thus,

Eastern-type operators were never the most responsible operators under the Coal Act.[6]

It is clear from the Supreme Court's decision in <u>Peabody</u> that SSA was not

making an impermissible "second" assignment when it assigned <u>Eastern</u> beneficiaries to

Peabody. Peabody quotes the following statement from the Supreme Court case it lost in

2003:

> "'Congress wished to identify the first, most responsible operator for a
> given retiree, and not to follow that with a second assignment to a less
> responsible operator if the initial assigned operator left the business.'"
> D.I. 17 at 15-16 (quoting <u>Peabody</u>, 537 U.S. at 169 n.12).

Significantly, Peabody fails to include the next sentence from the Supreme Court's

<u>Peabody</u> decision: "This interest * * * opts for finality only once an <u>accurate initial</u>

<u>assignment</u> has been made." 537 U.S. at 169 n.12 (emphasis added). In the words of the

Supreme Court, the assignment process stops only after SSA has made an "accurate

initial assignment." <u>Id</u>.

The original assignments to Eastern-type operators were not "accurate," because

they violated the Fifth Amendment to the Constitution. <u>See</u> <u>Eastern Enterprises</u>, 524 U.S.

at 538 (plurality opinion); <u>id</u>. at 550 (Kennedy, J., concurring). When SSA assigned

<u>Eastern</u> beneficiaries to Peabody, SSA was undeniably making the first, accurate

assignment of those beneficiaries.[7]

---

<u>Helen</u> decision thus said nothing about the correctness of SSA's assignments of
beneficiaries to operators such as Peabody as to whom the Coal Act is constitutional.

[6]  Peabody conceded this point when it stated in its opening brief that Eastern-type
operators "were never eligible to receive assignments and that those assignments <u>were</u>
<u>invalid from the beginning</u>." D.I. 17 at 28 (emphasis added).

[7]  The fact that SSA does not reassign beneficiaries correctly assigned to operators when
those operators later go out of business shows only that, once SSA has made a proper

The dissent in Pittston, on which Peabody relies in its opening brief, similarly

fails to take into account the retroactivity of the holding in Eastern Enterprises. See D.I.

17 at 22, quoting Pittston, 368 F.3d at 407 (Wilkins, C.J., dissenting). According to the

Pittston dissent, it is not permissible to reassign Eastern beneficiaries, because "the plain

language of § 9706(a) at the time the original assignments were made identified a single

company — an Eastern-type company." 368 F.3d at 407 (Wilkins, C.J., dissenting). As

the Fourth Circuit explained in Pittston, the dissent's argument "fails to take into account

the retroactivity of the holding in Eastern Enterprises." Id. at 404 n.3. The Pittston

majority continued:

> "Even though Eastern Enterprises was decided six years after enactment of
> the Coal Act, it had the effect of disqualifying ab initio Eastern-like
> companies from the pool to whom the Commissioner could assign retirees.
> The dissent's statement that the Coal Act 'identified a single company —
> an Eastern-type company' — to whom to assign the 95 retirees at issue is
> literally true, but it is incomplete in that it fails to address how the
> assignment pool was to be determined when Eastern-like companies were
> disqualified as of the time the original assignments were made." Id.[8]

In disregarding Eastern-type operators for purposes of making assignments, SSA

was simply giving effect to the retroactive nature of the Supreme Court's ruling in

Eastern Enterprises. The Fourth Circuit correctly observed in Pittston that SSA

---

assignment, the agency does not revisit that correct assignment for potential
reassignment. SSA's assignments to Eastern-type operators, however, were (as we now
know) incorrect when made, and thus Eastern beneficiaries are not similarly situated to
beneficiaries formerly assigned (correctly) to now-out-of-business operators. See D.I. 17
at 15-16 (urging Court to allocate Eastern beneficiaries permanently to unassigned pool
in same way as if the operators to whom the beneficiaries had been assigned originally —
and correctly — later went out of business).

[8]  Like Peabody here, the dissent in Pittston incorrectly relied on Sigmon, while ignoring
the Supreme Court's more recent Peabody decision. See Pittston, 368 F.3d at 406-09
(Wilkins, C.J., dissenting) (citing Sigmon to bolster claim that the "language of the Coal

"merely removed from the pool of possible contributors those coal
operators that could not constitutionally be required to contribute. Among
the remaining contributors, she [the Commissioner] followed the Coal
Act's assignment structure to the letter." Id. at 404.

Thus, SSA did not read additional words into the statute, as Peabody contends (D.I. 17 at

23), but "merely followed the Supreme Court's ruling that the Coal Act may only apply

to a narrower group of persons than previously thought." 368 F.3d at 404.[9]

The absence of any need to "insert words" into the Coal Act distinguishes this

case from Marchetti v. United States, 390 U.S. 39 (1968), on which Peabody relies. See

D.I. 17 at 24-25. In Marchetti, the Supreme Court was asked to impose a new

exclusionary rule in criminal proceedings in order to save a statute that could not

constitutionally be applied to Marchetti and others, without any apparent justification in

the language or history of the statute. The Court refused and struck down the statute.

390 U.S. at 58–60. In the instant case, by contrast, SSA's assignments to Peabody of

Eastern beneficiaries effectuate Congress's primary purposes in enacting the Coal Act, as

made clear by the Act's legislative history, are consistent with the overall structure of the

Act, and do not require a new court-created rule of evidence or similar rule divorced from

the language and structure of the Act.

---

Act plainly provides no authority for the agency action"). As we showed above,
Peabody, not Sigmon, is the more relevant Supreme Court precedent.

[9] Peabody ignores the fact that a unanimous panel of the Sixth Circuit engaged in its own
analysis of this issue and reached the same result as the panel majority in Pittston. See
Sidney Coal, 427 F.3d at 348 n.15 ("The Supreme Court's decision [in Eastern
Enterprises] effectively excused now-ineligible companies from the list of coal operators
to whom beneficiaries could be constitutionally assigned, thereby creating a smaller pool
of qualified operators. The SSA simply applied the statute to the newly narrowed
pool.").

**III.    Peabody Ignores the Clear Evidence of Legislative Intent Supporting SSA's Decision.**

SSA and the Trustees demonstrated in their opening briefs that SSA's decision to assign <u>Eastern</u> beneficiaries to Peabody is fully consistent with Congress's overlapping aims of imposing premium obligations on the operators that benefited from the miners' labor and limiting the size of the unassigned population.  SSA Br. (D.I. 10) at 12-16; Trustees' Br. (D.I. 14) at 13-15.  In response, Peabody ignores virtually all of the evidence of congressional intent presented by SSA and the Trustees, claiming instead that "allocating the Eastern beneficiaries to the unassigned pool is not only required by the language of section 9706, it is also the only result consistent with the congressional goal of moderating the financial impact of the legislation on the 1978 and subsequent NBCWA signatory companies."  D.I. 17 at 34.

Peabody's characterizations of Congress's intent cannot be reconciled with the Coal Act's legislative history or the Supreme Court's decision in <u>Peabody</u> interpreting and applying that legislative history.  Peabody asserts, without citation, that "Congress understood there would be thousands of miners who, as a practical matter, would not be allocated under the Coal Act's responsible operator criteria."  <u>Id</u>. at 29.  This argument does not work any better now than it did in the Supreme Court, when Peabody claimed that 330 Combined Fund beneficiaries that SSA had assigned to Peabody after October 1, 1993 should have been designated permanently as "unassigned."  <u>See</u> <u>Peabody</u>, 537 U.S. at 156.

Although Congress anticipated that certain Combined Fund beneficiaries would be designated "unassigned," the Supreme Court explained in <u>Peabody</u> that "[i]t seems not to have crossed Congress's mind that the category of the 'unassigned' would include

- 13 -

beneficiaries, let alone a lot of beneficiaries, who could be connected with an operator * * * ." 537 U.S. at 165-66. The <u>Peabody</u> Court specifically noted that the Coal Act's purpose was to assure that "'the number of unassigned beneficiaries is kept to an absolute minimum.'" <u>Id</u>. at 165 (quoting 138 Cong. Rec. 34003 (1992)). Peabody does not explain here how this purpose can be satisfied by placing <u>Eastern</u> beneficiaries in the unassigned pool when an employer — like Peabody — remains in business and is constitutionally available to receive assignments.

"Congress's overriding purpose in enacting the Coal Act," was not merely to "extricate the UMWA Benefit Plans from serious financial crisis and thereby secure delivery of benefits for more than one hundred thousand UMWA retirees and dependents" as Peabody contends (D.I. 17 at 29), but to create a financing mechanism that "identif[ied] persons most responsible for plan liabilities" and to "stabilize plan funding * * *." <u>Peabody</u>, 537 U.S. at 154, 171 (quoting the Energy Policy Act of 1992, Pub. L. No. 102-486, § 19142, 106 Stat. 3037, 26 U.S.C. § 9701 note). The Court of Appeals similarly described Congress's intent in enacting the Coal Act:

> "In short, the Coal Act's key objective is to ensure that the costs of providing retirement benefits will, so far as possible, be borne by the private parties most responsible for creating retired miners' expectations of lifetime health benefits." <u>Shenango, Inc. v. Apfel</u>, 307 F.3d 174, 195 (3d Cir. 2002).

<u>See also id</u>. at 196 (concluding that the Coal Act was "intended to impose funding burdens on the most responsible parties and [to avoid] shift[ing] funding burdens to the government or other companies with no connection to the beneficiaries assigned to those companies"). Thus, "the Act requires the Commissioner to assign, where possible, every

coal industry retiree to a 'signatory operator.'" Peabody, 537 U.S. at 153. That is precisely what SSA did when it assigned Eastern beneficiaries to Peabody.[10]

It is no answer for Peabody to state that the legislative history that SSA and the Trustees have presented to the Court "cannot supercede the statute itself." D.I. 17 at 30 n.11. Peabody and Shenango clearly validate SSA's decision to assign Eastern beneficiaries to Peabody. In those cases, the Supreme Court and the Court of Appeals, respectively, relied heavily on the Coal Act's legislative history in affirming SSA's authority to make initial assignments of beneficiaries after the date specified in the Act,[11] despite the fact that the plain language of the statute directed SSA to make all such assignments before that date. See 26 U.S.C. § 9706(a) ("For purposes of this chapter, the Commissioner of Social Security shall, before October 1, 1993, assign each coal industry retiree who is an eligible beneficiary to a signatory operator * * *."). That same legislative history bolsters SSA's decision here.

---

[10] The post-Eastern, 1998 statements from Senators Brownback, Rockefeller, and Conrad on which Peabody relies (D.I. 17 at 17-18) do not support Peabody's contention that Congress intended, in 1992, that beneficiaries whose assignments might be ruled unconstitutional be placed in the unassigned pool, even where a former employer remained in business. Although Congress, after Eastern Enterprises, did not amend the statute to address, explicitly, whether these beneficiaries should be assigned or placed in the unassigned pool, a busy Congress often leaves issues of statutory construction to the courts. In any event, were the Brownback, Rockefeller and Conrad statements to be given the significance Peabody seeks for them, the statements would point to nonseverability, a contention that Peabody does not advance.

[11] Peabody, 537 U.S. at 171-72; Shenango, 307 F.3d at 195-96.

## IV.    This Court Should Reject Peabody's Claim that
## SSA's Decision Is Not Entitled to Deference.

In their respective briefs, SSA and the Trustees demonstrated that SSA's decision to assign Eastern beneficiaries to Peabody is entitled to deference under the Chevron or Skidmore standards.  SSA Br. (D.I. 10) at 16-17; Trustees' Br. (D.I. 14) at 18-19.  In response, Peabody contends that "SSA is not entitled to deference in its implementation of the Coal Act under Chevron" and ignores the separate issue of whether this Court should defer to SSA's decision under Skidmore.  D.I. 17 at 35.  The arguments Peabody makes against deference are without merit.

Peabody's contention that SSA's interpretation of § 9706(a) cannot be accorded Chevron deference because Congress did not delegate "rule-making or interpretive authority" to SSA (D.I. 17 at 35) ignores several circuit court decisions that have held to the contrary, each of which was cited by either SSA or the Trustees in their opening briefs.[12]  In United States v. Mead Corp. — a case on which Peabody relies (D.I. 17 at 35) — the Supreme Court made clear that rulemaking is not a prerequisite to Chevron deference.  See Mead, 533 U.S. 218, 230-31 (2001) ("[A]s significant as notice-and-comment is in pointing to Chevron authority, the want of that procedure here does not decide the case, for we have sometimes found reasons for Chevron deference even when no such administrative formality was required and none was afforded.");

---

[12]  See Trustees' Br. (D.I. 14) at 19 (citing Ass'n of Bituminous Contractors, Inc. v. Apfel, 156 F.3d 1246, 1251 (D.C. Cir. 1998) (deferring to SSA's construction of the Coal Act under Chevron)); SSA Br. (D.I. 10) at 16 (citing Holland v. Nat'l Mining Ass'n, 309 F.3d 808, 817 (D.C. Cir. 2002) (Chevron deference applies to Commissioner's "own reasoned judgment on the meaning of the statute"), and Holland v. Pardee Coal Co., 269 F.3d 424, 431 n.8 (4th Cir. 2001) (holding that Chevron analysis applies to Commissioner's interpretation of the Coal Act, although ultimately deciding the case on Chevron step one), cert. denied, 537 U.S. 1159 (2003)).

Barnhart v. Walton, 535 U.S. 212, 222 (2002) (noting that an agency "reach[ing] its interpretation through means less formal than 'notice and comment' rulemaking does not automatically deprive that interpretation of the judicial deference otherwise its due") (citation omitted).

Peabody seeks to avoid the impact of these judicial decisions by pointing to statements by two SSA officials that SSA has "no discretion" in applying the "very precise" assignment criteria in the Coal Act. D.I. 17 at 14 n.6 & 35 n.15. Peabody's reliance on these statements is misplaced because each reflects SSA's understanding of its task in assigning beneficiaries to operators before Eastern Enterprises was decided. SSA's task, prior to Eastern Enterprises, of applying the assignment criteria set forth in § 9706(a) was indeed a comparatively mechanical (albeit complex) one. After Eastern Enterprises, however, the Coal Act no longer provided SSA with a mechanical answer respecting the potential assignment or non-assignment of Eastern beneficiaries. Because the only answer provided by the statute's plain language — assignment to the Eastern-type operators — had been struck down in Eastern Enterprises, the task fell to SSA to determine how to apply the Act's assignment provisions with respect to Eastern beneficiaries.

As Congress's intent cannot be deemed conclusive based solely on the plain language of the Coal Act, this Court should join the U.S. Courts of Appeals for the Fourth, Sixth and D.C. Circuits in ruling that SSA's decision to assign Eastern beneficiaries to companies for whom they worked and as to whom it is constitutional to make assignments was based on a "permissible construction" of the statute. See Sidney Coal, 427 F.3d at 346, 349; Elgin, 2005 U.S. App. LEXIS 7361; Pittston, 368 F.3d at

401, 404 n.3, 405; see also Walton, 535 U.S. at 218 (holding that deference under

Chevron is appropriate where the agency's interpretation does not "exceed[] the bounds

of the permissible").[13]

---

[13] Were this Court to conclude that Chevron deference is inappropriate here, the Court should defer to SSA's judgment under Skidmore v. Swift & Co., 323 U.S. 134 (1944). See SSA Br. (D.I. 10) at 17 (citing Brown v. United States, 327 F.3d 1198, 1205-06 (D.C. Cir. 2003) (granting Skidmore deference to an agency's solution to an "unforeseen problem" in a statutory scheme)).

## CONCLUSION

For the foregoing reasons and those set forth in SSA's and the Trustees' opening briefs, the Trustees respectfully request that the Court grant judgment in favor of SSA and the Trustees.

Respectfully submitted,

*/s/ Carolyn S. Hake (#3839)*

_____

Philip Trainer, Jr. (#2788)
Carolyn S. Hake (#3839)
ASHBY & GEDDES
222 Delaware Avenue
P.O. Box 1150
Wilmington, DE 19899
(302) 654-1888
ptrainer@ashby-geddes.com
chake@ashby-geddes.com

- and -

David W. Allen
General Counsel
Larry D. Newsome
Associate General Counsel
Christopher F. Clarke
Senior Assistant General Counsel
UMWA Health & Retirement Funds
Office of the General Counsel
2121 K Street, N.W.
Washington, D.C. 20037
(202) 521-2238

*Attorneys for Defendant-Intervenors*
*Michael H. Holland et al., Trustees of the*
*UMWA Combined Benefit Fund*

Dated: May 8, 2006

169276.1

## CERTIFICATE OF SERVICE

I hereby certify that on the 8th day of May, 2006, the attached **DEFENDANT-INTERVENOR TRUSTEES' COMBINED REPLY TO PLAINTIFFS' OPPOSITION TO TRUSTEES' MOTION FOR SUMMARY JUDGMENT AND OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT** was served upon the below-named counsel at the address and in the manner indicated:

Patricia C. Hannigan, Esquire                      <u>VIA HAND DELIVERY</u>
U.S. Attorney's Office
1007 Orange Street, Suite 700
Wilmington, DE 19899

Eric R. Womack, Esquire                            <u>VIA FEDERAL EXPRESS</u>
Trial Attorney, Federal Programs Branch
Civil Division, U.S. Department of Justice
20 Massachusetts Ave., N.W.
Washington, D.C. 20001

Thomas R. Hunt, Jr., Esquire                       <u>VIA HAND DELIVERY</u>
Jason A. Cincilla, Esquire
Morris, Nichols, Arsht & Tunnell
1201 North Market Street
Wilmington, DE 19899

John R. Woodrum, Esquire                           <u>VIA FEDERAL EXPRESS</u>
Ogletree, Deakins, Nash, Smoak & Stewart, P.C.
Fifth Floor
2400 N Street, N.W.
Washington, D.C. 20037

*/s/ Carolyn S. Hake*
_____
Carolyn S. Hake  (#3839)

169268.1