IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| PEABODY COAL CO., LLC, and<br>EASTERN ASSOCIATED COAL CORP., | )<br>)<br>) |
| Plaintiffs, | )<br>)<br>) |
| v. | )<br>) |
| JO ANNE B. BARNHART,<br>Commissioner of Social Security, | )<br>) Civil Action No. 05-671-SLR<br>) |
| Defendant, | )<br>)<br>) |
| and | )<br>) |
| MICHAEL H. HOLLAND, *et al.*, Trustees of<br>the UMWA Combined Benefit Fund, | )<br>)<br>) |
| Defendant-Intervenors. | )<br>) |

REPLY MEMORANDUM IN SUPPORT OF
DEFENDANT'S MOTION TO DISMISS AND IN OPPOSITION
TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

COLM F. CONNOLLY
United States Attorney

PATRICIA C. HANNIGAN
Assistant United States Attorney
The Nemours Building
1007 Orange Street, Suite 700
P. O. Box 2046
Wilmington, DE 19899-2046
(302) 573-6277

PETER D. KEISLER
Assistant Attorney General

RICHARD G. LEPLEY
Assistant Branch Director
ERIC R. WOMACK
Trial Attorney
Civil Division, Federal Programs Branch
U. S. Department of Justice
20 Massachusetts Ave., N.W.
Washington, D.C. 20530
(202) 514-4020

*Attorneys for Defendant Commissioner of Social Security*

Dated: May 8, 2006

## TABLE OF CONTENTS

                                                                    **PAGE**

TABLE OF AUTHORITIES ................................................................................. ii

INTRODUCTION ........................................................................................... 1

ARGUMENT .................................................................................................. 3

    I.     THE COMMISSIONER ACTED WITHIN HER STATUTORY
          AUTHORITY IN MAKING THE ASSIGNMENTS TO PLAINTIFFS. ............. 3

        A.     In Light of <u>Eastern Enterprises</u>, Both the Commissioner
              and the Plaintiffs Propose Funding the Benefits at Issue
              Here Differently than Congress Originally Intended. ............................... 3

        B.     Plaintiffs' Approach Cannot be Justified under Normal
              Principles of Severability ........................................................................ 5

        C.     The Structure of the Coal Act Does Not Dictate a Contrary
              Result ..................................................................................................... 13

        D.     Deference is Due to the Commissioner's Interpretation
              of the Coal Act .......................................................................................15

CONCLUSION ............................................................................................... 16

## TABLE OF AUTHORITIES

**CASES**                                                                    **PAGE**

Alaska Airlines, Inc. v. Brock,
    480 U.S. 678 (1987) ............................................................................... 5, 7

Ass'n of Bituminous Contractors, Inc. v. Apfel,
    156 F.3d 1246 (D.C. Cir. 1998) ...................................................................... 16

Barnhart v. Peabody Coal Co.,
    537 U.S. 149 (2003) ............................................... 2, 5, 7-13, 13 n.7, 14-15

Barnhart v. Sigmon Coal Co.,
    534 U.S. 438 (2002) ........................................................................... 5, 12

Carnival Cruise Lines, Inc. v. United States,
    200 F.3d 1361 (Fed. Cir.), cert. denied, 530 U.S. 1274 (2000) ......................... 6

Eastern Enterprises v. Apfel,
    524 U.S. 498 (1998) ........................................ 1-5, 10, 12 n.6, 13, 15 n.8

Elgin Nat'l Indus. v. Barnhart,
    Nos. 04-5243 & 04-7094, 2005 U.S. App. LEXIS 7361 (D.C. Cir. Apr. 27, 2005)
    .......................................................................................... 1, 12 n.6

Holland v. National Mining Ass'n,
    309 F.3d 808 (D.C. Cir. 2002) ...................................................................... 16

Lemon v. Kurtzman,
    403 U.S. 602 (1971) ....................................................................................... 7

Marchetti v. United States,
    390 U.S. 39 (1968) .................................................................................. 9 n.5

Minnesota v. Mille Lacs Band of Chippewa Indians,
    526 U.S. 172 (1999) ....................................................................................... 7

NLRB v. Fruit and Vegetable Packers and Warehousemen, Local 760,
    377 U.S. 58 (1964) .................................................................................. 8 n.4

Nell Jean Indus., Inc. v. Barnhart,
    224 F. Supp.2d 10 (D. D.C. 2002) .................................................................. 2

Pittston Co. v. United States,
    368 F.3d 385 (4th Cir. 2004), cert. denied, 125 S.Ct. 1589 (2005) ........................
    ........................................................................................ 1, 2, 6, 9, 11, 12, 12 n.6, 14

Shenango, Inc. v. Apfel,
    307 F.3d 174 (2002) .............................................................. 2, 7-11, 13 n.7

Sidney Coal Co. v. SSA,
    427 F.3d 336 (6th Cir. 2005), cert. denied, 126 S. Ct. 1608 (2006) ......................
    .................................................................................................... 1, 7, 9, 12 n.6

Tilton v. Richardson,
    403 U.S. 672 (1971) ............................................................................ 6

United States v. Craft,
    535 U.S. 274 (2002) ......................................................................... 15 n.8

United States v. Mead Corp.,
    533 U.S. 218 (2001) ..................................................................... 4 n.1, 16

Usery v. Turner Elkhorn Mining Co.,
    428 U.S. 1 (1976) ............................................................................. 9 n.4

Wheeling-Pittsburgh Steel Corp. v. Barnhart,
    229 F. Supp.2d 539 (N.D. W.Va. 2002) ........................................................ 2

Zemel v. Rusk,
    381 U.S. 1 (1965) ........................................................................... 15 n.8

**STATUTES**

26 U.S.C. § 9706 .................................................................. 3, 5, 7, 8 n.4, 12, 14, 15

**INTRODUCTION**

Following the Supreme Court's decision in <u>Eastern Enterprises v. Apfel</u>, 524

U.S. 498 (1998), the Commissioner of Social Security had to apply the Coal Act's

assignment provisions in light of the Court's declaration that the Act is unconstitutional

as applied to certain coal companies. Faced with a history of collapsed funding

mechanisms for miners' benefits, the problem presented by <u>Eastern Enterprises</u> was of

no small import to the vitality of the Act. However, in deciding how to best provide for

the funding of health care benefits for Combined Fund beneficiaries previously assigned

to Eastern-like operators, the Commissioner was aided by clear expressions of

Congress's intent to keep the number of unassigned beneficiaries to a minimum. With

this purpose in mind, and given the retroactive effect of <u>Eastern</u>, the Commissioner

declared the assignment of miners to Eastern-like operators void *ab initio*, and then

followed the Coal Act's statutory assignment scheme to the letter to determine

responsible operators.

Since the Commissioner's constitutional assignment of these miners to

responsible operators, coal companies have sought to invalidate these assignments.

Time after time, however, the federal courts have rejected these challenges. As a result,

no judicial decision with continuing precedential authority has adopted the position

asserted by these companies. See <u>Sidney Coal Co. v. SSA</u>, 427 F.3d 336 (6th Cir.

2005), <u>cert. denied</u>, 126 S. Ct. 1608 (Mar. 20, 2006); <u>Elgin Nat'l Indus. v. Barnhart</u>,

Nos. 04-5243 & 04-7094, 2005 U.S. App. LEXIS 7361 (D.C. Cir. Apr. 27, 2005);

<u>Pittston Co. v. United States</u>, 368 F.3d 385 (4th Cir. 2004), <u>cert. denied</u>, 125 S.Ct. 1589

1

(2005); Nell Jean Indus., Inc. v. Barnhart, 224 F. Supp.2d 10, 26 (D. D.C. 2002);

Wheeling-Pittsburgh Steel Corp. v. Barnhart, 229 F. Supp.2d 539, 554 (N.D. W.Va.

2002).

 In spite of this overwhelming authority to the contrary, plaintiffs raise the same

issues in their Motion for Summary Judgment that have been repeatedly rejected by the

courts. In the Motion, plaintiffs largely ignore these cases, attempting to refute only the

logic of the Fourth Circuit in Pittston. In fact, plaintiffs fail to cite the Sixth Circuit's

recent unanimous decision in Sidney at any point in their brief.

 Given the recognized logic of the Commissioner's position and the clear

purpose of the Coal Act, as explained by the Supreme Court in Barnhart v. Peabody

Coal Co., 537 U.S. 149 (2003), and the Third Circuit in Shenango, Inc. v. Apfel, 307

F.3d 174 (2002), there is no justification for a departure from this persuasive line of

precedent. Plaintiffs would like to shift the burden placed on them by the Coal Act and

the Supreme Court's interpretation of the Act's provisions to the public fisc or to other

operators having no employment relationship to those miners affected by Eastern

Enterprises. The result of such a decision would be a monetary windfall for the

plaintiffs in derogation of the express congressional purpose motivating the passage of

the Coal Act.

2

**ARGUMENT**

I.  **THE COMMISSIONER ACTED WITHIN HER STATUTORY
    AUTHORITY IN MAKING THE ASSIGNMENTS TO PLAINTIFFS**

A.  **In Light of Eastern Enterprises, Both the Commissioner and the
    Plaintiffs Propose Funding the Benefits at Issue Here Differently
    than Congress Originally Intended**

The basic thrust of plaintiffs' argument with respect to post-Eastern Enterprises

reassignments is that the Commissioner erred in assigning the beneficiaries to them

because the statute mandates that these beneficiaries be assigned to "*one - and only one

- assigned operator*"—in this case, an Eastern-like operator. Ps.' Mot. for Summ. J.,

D.I. 17, at 12-15. But it is not the Commissioner who has chosen to "recalibrate" the

statutory scheme provided by 26 U.S.C. § 9706(a). Id. at 14. The Supreme Court has

held that making assignments to Eastern-like operators violates the Constitution. The

Commissioner has sworn to uphold the Constitution and will not make assignments that

violate the Constitution, as construed by the Supreme Court. Accordingly, it should be

clear that whatever this Court decides, the beneficiaries at issue cannot and will not be

assigned to Eastern-like operators, as the statutory scheme originally required. The

question here is, given that Eastern-like operators will not pay for these beneficiaries'

benefits, who will?

The parties suggest different answers to this question. The Commissioner

answers this question by treating assignments to Eastern-like operators as void *ab initio*

and then making assignments according to the statutory scheme, with the result that

plaintiffs are responsible for the assigned beneficiaries. Plaintiffs propose placing the

beneficiaries at issue in the unassigned beneficiary pool, which would result in the

3

federal treasury and/or all assigned operators paying benefits.  See Commissioner's

Mot. to Dismiss, D.I. 9, at 5.  The fact that the statute called for Eastern-like operators

to pay simply does not help this Court choose between the Commissioner's statutory

interpretation and plaintiffs' in the wake of Eastern Enterprises.

      Plaintiffs interpret the statute's silence with regard to the Supreme Court's

invalidation of Eastern assignments as proof that the statutory scheme is "an

unambiguous blueprint that neither contemplates nor authorizes" changes to the Act by

the Commissioner.  Pls.' Mot. for Summ. J., D.I. 17, at 12-15.  However, the plaintiffs'

argument reverses the traditional application of severability and deference to agency

decisionmaking.[1]  The Commissioner did not make any "changes" to the statutory

scheme.  Instead, the Commissioner was forced to react to a decision of the Supreme

Court declaring one express application of the statute unconstitutional.  Because

Congress did not predict such an outcome, the only question for the Court is whether

the Commissioner's action in light of Eastern Enterprises was consistent with the intent

of Congress and the purpose of the Coal Act.

---

   [1] Even in those cases where an agency has received no express delegation of
authority, that fact does not end the inquiry.  An agency need not have expressly
delegated powers to interpret a statute that it administers.  See United States v. Mead
Corp., 533 U.S. 218, 227 (2001) ("But whether or not they enjoy any express delegation
of authority on a particular question, agencies charged with applying a statute
necessarily make all sorts of interpretive choices, and while not all of those choices
bind judges to follow them, they certainly may influence courts facing questions the
agencies have already answered.").  However, as will be explained below, the
Commissioner has been delegated authority to administer the Coal Act.

4

**B.     Plaintiffs' Approach Cannot be Justified under Normal Principles of Severability**

As noted in the Commissioner's opening brief, the fact that <u>Eastern Enterprises</u> declared unconstitutional certain applications of the Coal Act simply means that normal severability analysis applies. The application of severability analysis strikes out the unconstitutional applications of a statute and thereby, necessarily and to that limited extent, alters it. <u>See</u> <u>Alaska Airlines, Inc. v. Brock</u>, 480 U.S. 678, 684 (1987). This is required where Congress enacts a statute that is unconstitutional in one or more applications but constitutional in others.

Application of these principles here is straightforward. The Coal Act requires the Commissioner to go through a hierarchy of potential assignees until a proper assignee is identified. <u>See</u> 26 U.S.C. § 9706(a). When an assignment cannot be made because, for example, the potential assignee has gone out of business, the Commissioner disregards that potential assignee in making the assignment. When an assignment is erroneous, it can be corrected. <u>See</u> <u>id.</u> § 9706(f). And when an initial assignment is not made by the statutory deadline, it is still valid. <u>Peabody</u>, 537 U.S. 149. The result of this statutory scheme is that the Commissioner makes a valid assignment for each beneficiary unless "no existing company falls within the [statutory] categories." <u>Barnhart v. Sigmon Coal Co.</u>, 534 U.S. 438, 447 (2002). As the plaintiffs concede, when an assignment to an Eastern-like operator must be severed from the remainder of the statute, all of the results of that unconstitutional application must be

undone.[2]  That requires not only voiding the assignment itself, but also reinitiating the

search through the hierarchy for an initial, accurate assignment.  That is precisely what

the Commissioner did here.

Citing Carnival Cruise Lines, Inc. v. United States, 200 F.3d 1361 (Fed. Cir.),

cert. denied, 530 U.S. 1274 (2000), plaintiffs imply that severability analysis should

never increase an entity's statutory liability.  See Pls.' Mot. for Summ. J., D.I. 17, at 26.

However, in the context of severing unconstitutional provisions from constitutional

ones, it is not uncommon for courts to permit an action that a statute, on its face,

appears to preclude.  See Pittston, 368 F.3d at 405 ("Severing a statute's provisions will

occasionally result in enhanced liabilities for some parties as a result of the remaining

provisions.").[3]

For example, in Tilton v. Richardson, 403 U.S. 672 (1971), the Supreme Court

addressed the constitutionality of a statute allowing federal funding for academic

facilities at church-related colleges and universities.  The Court found that the statute

was generally constitutional but that its enforcement provision (allowing the

government to recover a portion of the funding if the facility was impermissibly used

for religious purposes during its first twenty years) was "inadequate to ensure"

---

[2] "Plaintiffs agree that the effect of retroactivity jurisprudence means the super
reachback companies were never eligible to receive assignments, and that the
assignments were invalid from the beginning." Pls.' Mot. for Summ. J., D.I. 17, at 28.

[3] Plaintiffs' argument is also logically unpersuasive in light of the fact that even
their proposal of placing beneficiaries in the unassigned pool risks increasing liability
for *other* coal companies through the potential assessment of unassigned beneficiaries
premiums.

compliance with constitutional standards, id. at 682 (plurality op.), because it could

result in "a contribution of some value to a religious body," after the twenty-year

period, id. at 683 (plurality op.). Rather than strike down the entire statutory scheme,

however, the Supreme Court excised the unconstitutional twenty-year limitation on the

government's remedy. Id. at 683-84 (plurality op.); Lemon v. Kurtzman, 403 U.S. 602,

665 n.1 (1971) (White, J, concurring in the Tilton decision, specifically with respect to

removing the twenty-year limitation). As a result, the government was allowed to

recover funds after twenty years had elapsed. Here, too, excising Eastern-like operators

from the assignment hierarchy in 26 U.S.C. § 9706(a) was necessary to bring

congressional intent and constitutional requirements in line. See Sidney, 427 F.3d at

347.

The fact that severability analysis "is essentially an inquiry into legislative

intent," Minnesota v. Mille Lacs Band of Chippewa Indians, 526 U.S. 172, 191 (1999);

accord Alaska Airlines, 480 U.S. at 685, strongly reinforces the Commissioner's

application of severability analysis here. The plaintiffs' arguments closely parallel

those expressly rejected by the Supreme Court in Barnhart v. Peabody Coal Co., 537

U.S. 149 (2003), and the Third Circuit in Shenango, Inc. v. Apfel, 307 F.3d 174 (3d Cir.

2002). Here, plaintiffs argue that 26 U.S.C. § 9706(a) authorized the Commissioner

only to assign the beneficiaries to specific Eastern-like operators. They further assert

that unless an assignment is made as specifically authorized (i.e., to the Eastern-like

operator), the beneficiary must remain permanently unassigned. The Peabody and

Shenango plaintiffs similarly pointed out that § 9706(a) authorized the Commissioner

7

only to assign beneficiaries "before October 1, 1993." Peabody, 537 U.S. at 156;

Shenango, 307 F.3d at 192. They further asserted that unless an assignment was made

as specifically authorized (i.e., before October 1, 1993), the beneficiary must remain

permanently unassigned. See id. at 156; 194.

The Supreme Court and the Third Circuit rejected the plaintiffs' argument. The

courts concluded that Congress had not anticipated that assignments would be made

after the statutory deadline, that this fact meant that the statute contained a gap, and that

the Commissioner reasonably filled that gap by continuing to make assignments after

the deadline, despite the apparent absence of statutory authority. Id. at 164-66; 194-96.

The Supreme Court's and the Third Circuit's decisions were motivated in large part by

Congress's clear intent in the Coal Act "to assign, where possible, *every* coal industry

retiree to a 'signatory operator.'" 537 U.S. at 153 (emphasis added); see also Shenango,

307 F.3d at 195-96 (preventing SSA from making assignments on or after October 1,

1993, would "surely frustrate" the objectives of the Coal Act by allowing "otherwise

assignable beneficiaries" to be "retained in the orphan retiree pool").

Of course, the same reasoning applies here. As Congress did not expect that

Eastern-like assignments would be held unconstitutional[4], this fact means that the

---

[4] Plaintiffs point to several comments by congressional opponents of the Coal Act, arguing against passage of the Act on the ground that section 9706(a)(3) reaches too far in imposing retroactive liability. However, the comments of several opponents of the Act do not provide a reliable indicator of congressional knowledge or intent. See, e.g., NLRB v. Fruit and Vegetable Packers and Warehousemen, Local 760, 377 U.S. 58, 66 (1964) ("[W]e have often cautioned against the danger, when interpreting a statute, of reliance upon the views of its legislative opponents."). After all, it would surely be a slight on Congress to assume that it knew about the unconstitutionality of the provision yet included it in the Act without providing for an administrative solution

8

---

assignees. See Pls.' Mot. for Summ. J., D.I. 17, at 31. But this distinction makes no

difference in the proper analysis of these cases. The Peabody and Shenango Courts

recognized that the issue of the Commissioner's authority to make initial assignments

on or after October 1, 1993, was a case "unprovided for" by Congress. 537 U.S. at 169;

307 F.3d at 194. Moreover, unlike the present case where the statute provides no

express directive to deal with the precise holding of Eastern Enterprises, the inability of

the Commissioner to make assignments on or after October 1, 1993, was expressly

foreclosed by statutory language. Thus, because the unconstitutionality of Eastern-like

assignments is as much (or even more) a case "unprovided for" than the inability of the

Commissioner to make initial assignments before October 1, 1993, Peabody clearly

applies here.

    The plaintiffs also argue that Peabody does not apply because "[p]laintiffs are

not seeking a windfall, they are seeking to bar the Commissioner from imposing a

financial burden Congress did not lay at their door." Pls.' Mot. for Summ. J., D.I. 17, at

32. However, in Peabody and Shenango, the plaintiffs similarly argued that Congress

did not intend to impose a financial burden on them from late assignments, as the

statute expressly prohibited assignments on or after October 1, 1993. Yet, the Supreme

Court in Peabody refused to allow an intervening event—the Commissioner's failure to

make all assignments by that date—to "shift financial burdens from otherwise

responsible private purses to the public fisc, let alone siphon money from funds set

aside expressly for a different public purpose, like the AML Fund for land reclamation."

537 U.S. at 160. The Supreme Court views a central purpose of the Coal Act as

10

keeping the number of unassigneds to an absolute minimum. Id. at 165. Accordingly, the Commissioner's assignment of Eastern beneficiaries to the plaintiffs prevents the same shifting of burdens from responsible operators to public funds.

Other than these unconvincing attempts to suggest a meaningful difference between the holding of Peabody and Shenango and this case, plaintiffs not only fail to explain why this Court should not follow this authority, but instead simply repeat arguments that these cases expressly rejected. Most notably, plaintiffs suggest that the very existence of unassigned beneficiaries supports their interpretation. See Pls.' Mot. for Summ. J., D.I. 17, at 29-30 ("Congress understood there would be thousands of miners who, as a practical matter, would not be allocated under the Coal Act's responsible operator criteria."). The Supreme Court rejected this very argument in Peabody, noting that "the Coal Act's provisions for unassigned beneficiaries . . . assumed that the 'unassigned' would be true orphans," and would not "include beneficiaries . . . who could be connected with an operator." 537 U.S. at 165-66. The beneficiaries at issue in this case are not "true orphans" who cannot "be connected with an operator"; they are plaintiffs' former employees in the coal industry. Thus, Peabody forecloses plaintiffs' argument.

While giving the Court's decision in Peabody little weight, plaintiffs rely heavily on the dissenting opinion of a single court of appeals judge from the Fourth Circuit. See Pls.' Mot. for Summ. J., D.I. 17, at 22-24 (relying on Judge Wilkins' dissent in Pittston). That judge, in turn, failed to acknowledge the existence of the

Peabody opinion.[6] See Pittston, 368 F.3d at 406-09 (Wilkins, J., concurring in part and dissenting in part without any mention of Peabody).

Plaintiffs also rely on Barnhart v. Sigmon Coal Co., 534 U.S. 438 (2002), which pre-dates Peabody. See Pls.' Mot. for Summ. J., D.I. 17, at 32-34. Sigmon is less on point than Peabody because it involved a different provision of the Coal Act, while Peabody and this case both involve § 9706(a). More importantly, while both Peabody and this case involve situations "unprovided for," in that they were not anticipated by Congress, Sigmon did not involve such a situation. See Sidney, 427 F.3d at 347-48 ("Plaintiffs-Appellees' reliance on Sigmon Coal is misplaced. There, the Supreme Court analyzed a statutory provision of the Coal Act in which there was no constitutional infirmity, holding that the SSA had interpreted a provision in contravention of the provision's unambiguous meaning."). Peabody, rather than Sigmon, is thus the more analogous case.

Against the overwhelming evidence of legislative intent favoring the Commissioner's interpretation, plaintiffs suggest an additional motive that Congress

---

[6] Plaintiffs' attempt to characterize the majority decision in Pittston as "unpersuasive," Pls.' Mot. for Summ. J., D.I. 17, at 21, is highly questionable in light of the fact that both the Sixth and the D.C. Circuits have cited the decision favorably. Sidney, 427 F.3d at 350; Elgin Nat'l Indus., 2005 U.S. App. LEXIS 7361, at *1. What is unpersuasive is the Plaintiffs' exclusive reliance on Judge Wilkins' arguments in dissent in Pittston that the Commissioner erred by interpreting Eastern-like operators to be out of business and by assigning them to "next in line" companies. Pls.' Mot. for Summ. J., D.I. 17, at 22-24. As the majority noted in Pittston, this argument entirely ignores the fact that, as plaintiffs concede, the assignments to these entities were void *ab initio* as a result of the Supreme Court's decision in Eastern Enterprises. 368 F.3d at 404 n.3.

may have had in enacting the Coal Act.  Plaintiffs argue that the Act was a legislative

compromise, an important part of which was the imposition of liability on Eastern-like

operators.  Pls.' Mot. for Summ. J., D.I. 17, at 32-34.  However, this is irrelevant to the

question at hand. It is undisputed that the Commissioner cannot make assignments to

Eastern-like operators under <u>Eastern Enterprises</u>, regardless of congressional intent in

this regard.[7]  Thus, the intent that plaintiffs would impute to Congress, regardless of its

accuracy, does not bear on the question presented to this Court.  Nor do plaintiffs'

assertions call into question the congressional intent that is relevant, namely the intent

to maximize the number of assignments and minimize the number of unassigned

beneficiaries, as found by the Supreme Court in <u>Peabody</u>.

C.    **The Structure of the Coal Act Does Not Dictate a Contrary Result**

Plaintiffs suggest that the structure of the Coal Act supports their interpretation

because the Act does not contain what they call a "next in line" assignment scheme.

<u>See</u> Pls.' Mot. for Summ. J., D.I. 17, at 28.  This argument completely misconstrues the

nature of the assignments to plaintiffs.  "Next in line" assignments involve schemes

where a valid assignment passes from one assignee to another, at the times and for the

reasons specified in the scheme (e.g., when one assignee ceases business, a new

---

[7] Plaintiffs do not explain how the legislative compromise in the Coal Act aids
the Commissioner in deciding how to choose between voiding the unconstitutional
assignments *ab initio* and then assigning miners according to the statutory scheme or
simply dumping the miners in the unassigned pool.  As explained in <u>Peabody</u> and
<u>Shenango</u>, the delicate compromise certainly did not include placing responsibility for a
large number of miners who should be assigned to a responsible operator under the
plain language of the statute on public funds or on operators who never employed these
miners.  <u>See Peabody</u>, 537 U.S. at 160.

13

assignee may take its place from that point forward). Plaintiffs are correct in stating
that the Coal Act is not such a scheme because it provides for a single valid assignment.
26 U.S.C. § 9706(a). For each beneficiary here, however, that single valid assignment
is to one of the plaintiffs. Although the beneficiaries were initially assigned to
Eastern-like operators, those initial assignments were unconstitutional and therefore
erroneous. The Commissioner corrected these erroneous assignments by voiding them
*ab initio* and retroactively reassigning the beneficiaries to the *correct* assignees, namely
plaintiffs. There is no "next in line" assignment, which would entail changing correct
assignments over time. As noted in our opening brief, the assignments to plaintiffs are
thus similar to the corrected assignments provided for in 26 U.S.C. § 9706(f),
Commissioner's Mot. to Dismiss, D.I. 9, at 14-15, and obviously comport with the
structure of the Act.

The plaintiffs next argue that the structure of the Coal Act supports their
interpretation because, "[w]hen an assigned operator goes out of business, . . . the
assigned operator's coal retirees are orphaned and seamlessly allocated to the pool of
unassigned beneficiaries." Pls.' Mot. for Summ. J., D.I. 17, at 15. However, that
argument again ignores the fact that the assignments were void *ab initio*. When
assigning the beneficiaries in the present case to the plaintiffs, the Commissioner was,
according to standard principles of retroactivity, making an initial assignment. For
purposes of such an assignment, so long as a beneficiary is "matchable" or "connected"
with an employer that remains in business, the Coal Act calls for the beneficiary to be
assigned. See Peabody, 537 U.S. at 164-65, 166; accord Pittston, 368 F.3d at 404 n.3

14

(Coal Act "leaves unassigned only those retirees who were *never* employed by a signatory operator that was 'in business' at the enactment of the Coal Act"). As there is no question that the beneficiaries at issue here are "matchable" and "connected" with plaintiffs (which employed these beneficiaries in the coal industry and which obviously remain in business), this Court would be deviating from the Supreme Court's analysis were it to conclude that the statute calls for these beneficiaries to be unassigned. Plaintiffs neither contend that the Supreme Court is wrong, nor explain how their argument can be reconciled with the Supreme Court's decision in Peabody.[8]

**D.     Deference Is Due to the Commissioner's Interpretation of the Coal Act**

As noted in the Motion to Dismiss, the Commissioner's interpretations of the Coal Act are entitled to deference. Commissioner's Mot. to Dismiss, D.I. 9, at 16-17. Plaintiffs' suggestion that United States v. Mead Corp., 533 U.S. 218 (2001), precludes deference because the Commissioner does not interpret the Act, see Pls.' Mot. for Summ. J., D.I. 17, at 35-36, is incorrect.

> [T]he Commissioner is explicitly charged with assigning eligible beneficiaries to signatory operators by section 9706 . . . . Implicit in that direction is a delegation to the Commissioner to determine who are the signatory operators, and the Commissioner must interpret the statute—including definitions of general applicability—to perform that task.

---

[8] In the course of this discussion, plaintiffs suggest that it is significant that Congress has not amended the Coal Act in light of Eastern Enterprises. See Pls.' Mot. for Summ. J., D.I. 17, at 17-18. Although it is problematic at best to draw any inference from Congressional inaction, see, e.g., United States v. Craft, 535 U.S. 274, 287 (2002), to the extent such inaction indicates any intent, it is an intent to endorse the status quo, Zemel v. Rusk, 381 U.S. 1, 11 (1965), namely the Commissioner's reassignments, including those to plaintiffs.

15

Ass'n of Bituminous Contractors, Inc. v. Apfel, 156 F.3d 1246, 1251 (D.C. Cir. 1998);

see, e.g., Holland v. National Mining Ass'n, 309 F.3d 808, 809 (D.C. Cir. 2002)

("Calculating the premiums requires the Commissioner to interpret the word

'reimbursements' in . . . the Coal Act."). Because Congress entrusted the

Commissioner with the interpretation of the Act, Mead is no impediment to Chevron

deference. See also Commissioner's Mot. to Dismiss, D.I. 9, at 16-17 (citing

post-Mead cases deferring to the Commissioner's interpretation of the Act).

## CONCLUSION

For the foregoing reasons, the Commissioner respectfully requests that the Court

dismiss the Plaintiffs' Complaint with prejudice.[9]

---

[9] The plaintiffs have attached to their Motion the affidavit of Joyce Wolfgang
describing the number of retirees assigned to the Plaintiffs in 1999. This fact is
immaterial to the Commissioner's Motion to Dismiss, and the Commissioner reserves
the right, if necessary, to contest the facts contained within the affidavit.

16

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

COLM F. CONNOLLY
United States Attorney

/s/Patricia C. Hannigan
Patricia C. Hannigan
Assistant United States Attorney
Delaware Bar I.D. No. 2145
The Nemours Building
1007 Orange Street, Suite 700
P. O. Box 2046
Wilmington, DE 19899-2046
(302) 573-6277
Patricia.Hannigan@usdoj.gov

RICHARD G. LEPLEY
Assistant Branch Director
Civil Division, Federal Programs Branch

/s/Eric R. Womack
Eric R. Womack
IL Bar I.D. No. 6279517
Trial Attorney
U. S. Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Ave., N.W.
Washington, D.C. 20530
(202) 514-4020
Eric.Womack@usdoj.gov

*Attorneys for Defendant Commissioner
Of Social Security*

17

## CERTIFICATE OF SERVICE

I hereby certify that on **May 8, 2006**, I electronically filed a **REPLY MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS AND OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT** with the Clerk of Court using CM/ECF. Notification of such filing will be electronically mailed to the following:

**Jason A. Cincilla, Esquire**
Morris, Nichols, Arsht & Tunnell
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jcincilla@mnat.com

**Carolyn Shelly Hake, Esquire**
Ashby & Geddes
222 Delaware Avenue
P.O. Box 1150
Wilmington, DE 19899
(302) 654-1888
chake@ashby-geddes.com

*Attorney for Peabody Coal Company, LLP
& Eastern Associated Coal Corp.*

*Attorney for Intervenor Defendant Trustees
of the United Mine Workers of America
Combined Benefit Fund*

COLM F. CONNOLLY
United States Attorney

/s/Patricia C. Hannigan
Patricia C. Hannigan
Assistant United States Attorney
Delaware Bar I.D. No. 2145
The Nemours Building
1007 Orange Street, Suite 700
P. O. Box 2046
Wilmington, DE 19899-2046
(302) 573-6277
Patricia.Hannigan@usdoj.gov